In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3171

SABRINA ROPPO,
individually and on behalf of others similarly situated,

*Plaintiff-Appellant,*

*v.*

TRAVELERS COMMERCIAL INSURANCE CO., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-05569 — **Edmond E. Chang**, *Judge.*

ARGUED SEPTEMBER 29, 2016 — DECIDED AUGUST 28, 2017

Before WOOD, *Chief Judge,* and RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* This dispute arises out of representation provided by Travelers Commercial Insurance Co. ("Travelers") to one of its insureds, Jeffery Block, following a motor vehicle accident. During the course of that personal-injury suit, Travelers and the attorneys it retained for Block disclosed only the limits of Block's automobile liability policy;

they did not disclose the existence of his additional umbrella policy. Ms. Roppo, the plaintiff in the underlying personal injury action, eventually learned of the umbrella policy and then settled the case.

She brought this proposed class action in state court against Travelers. Basing the action on several state law claims, she challenged Travelers's alleged practice of not disclosing the existence of umbrella policies. Travelers removed the action to the district court. Ms. Roppo then filed a motion to remand, claiming that the district court lacked jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court denied Ms. Roppo's motion to remand, but allowed her to file a second amended complaint, which added Block's defense attorney, Jason Hitchings, and his law firm, Maisel & Associates, as defendants. Ms. Roppo later filed a third amended complaint, adding an additional cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). The defendants then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted this motion and dismissed with prejudice the complaint's eleven counts.

Ms. Roppo now renews her argument that federal jurisdiction is lacking and therefore asks us to vacate the district court's judgment. She also contends that, even if the district court had jurisdiction, we should reverse its judgment because the third amended complaint sufficiently states claims of fraudulent misrepresentation, negligent misrepresentation, and negligence under Illinois law, as well as violations of the Illinois Insurance Code and the Illinois Consumer Fraud and Deceptive Business Practices Act. We cannot agree

with her submission and, for the reasons set forth in this opinion, we affirm the district court's dismissal of Ms. Roppo's third amended complaint.

# I

## BACKGROUND

### A.

Ms. Roppo's complaint recites that, on July 11, 2011, she suffered serious personal injuries in a motor vehicle accident with Jeffrey Block, a Travelers's insured. At the time of the accident, Block carried two types of insurance with Travelers: an automobile liability policy with a policy limit of $500,000 and a general umbrella policy with a policy limit of $1,000,000. The general umbrella policy would be triggered if Block's primary automobile policy limits were exhausted.

On August 9, 2011, Ms. Roppo's attorney requested that a Travelers claims adjuster provide Block's policy limits. On August 30, 2011, Travelers informed Ms. Roppo's attorney that, on the date of the accident, Block had a $500,000 combined single limit for property damage and bodily injury liability claims. Over a year later, in December 2012, Ms. Roppo underwent foot surgery to repair several bones that were broken in the accident. She then filed the underlying personal injury action against Block in state court. According to the complaint, between December 21, 2012, and January 22, 2013, Travelers again represented to Ms. Roppo's attorney that Block had only $500,000 of coverage available for the claim.

In early 2013, as part of discovery in the underlying personal injury suit, Ms. Roppo's attorney again requested information regarding Block's insurance policies. This request explicitly included information regarding Block's "umbrella or excess insurance coverage."[1] Mr. Hitchings, representing Block in the personal injury suit,[2] disclosed only Block's $500,000 automobile policy. According to the complaint, Ms. Roppo's attorney had been "lied to in another case" about Travelers's policy limits, and therefore continued to question whether Block also carried an umbrella policy.[3] Finally, on June 13, 2013, Mr. Hitchings disclosed the $1,000,000 umbrella policy. On May 9, 2014, Ms. Roppo settled her claim against Block for $750,000.

## B.

### 1.

One month after she learned of the existence of the umbrella policy, in July 2013, Ms. Roppo filed a putative class action in the Circuit Court of Cook County, Illinois, on behalf of "all Illinois persons who made a personal injury motor vehicle claim[] for accidents occurring after August 12, 1988 and had the Travelers Insurance Company[4] … misrepresent and

---

[1] R.63, ¶ 47 (emphasis removed).

[2] The complaint asserts that Roanne Maisel, doing business as Maisel & Associates, supervised Mr. Hitchings.

[3] *Id.* ¶ 26.

[4] In its removal papers, Travelers explained that the named defendant in the new state court action does not exist: "The alleged tortfeasor's auto

conceal the actual policy limits of their insured's facing claims from a third-party."[5] In Count I, Ms. Roppo alleged that Travelers had engaged in fraudulent concealment: through both Travelers's claim representative, Rachel Grace, and the attorney Travelers had retained on behalf of Block, Mr. Hitchings, Travelers had misrepresented and concealed the liability limits on Block's vehicle. In Count II, Ms. Roppo alleged an implied private right of action under 215 ILCS 5/143.24b, which requires that an insured "disclose the dollar amount of liability coverage under the insured's personal private passenger automobile liability insurance policy" when a specific request has been made.[6]

Travelers then removed the action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b). In its moving papers, Travelers argued that all of the requirements for removal under CAFA had been met: (1) Ms. Roppo had alleged a class size of "approximately 500 persons," far exceeding CAFA's requirement of at least 100 persons;[7] (2) there was the necessary diversity; and (3) based on the affidavit submitted by Gary G. Hafner, Travelers's Director of Underwriting, the amount in controversy ranged

---

policy was issued by Travelers Commercial Insurance Company and the alleged tortfeasor's personal liability umbrella policy was issued by The Travelers Indemnity Company of America." R.1 at 1 n.1. The complaint later was amended to name the correct defendants. For ease of discussion, we refer to the defendants collectively as Travelers.

[5] R.1-2, ¶ 2.

[6] *Id*. ¶ 33 (internal quotation marks omitted).

[7] *See* R.1 at 3 (internal quotation marks omitted) (citing 28 U.S.C. § 1332(d)(5)).

from the CAFA minimum of $5 million, *see* 28 U.S.C. § 1332(d)(2), to $500,000,000, the total amount of the insureds' coverage that, allegedly, had been concealed by Travelers.[8] One week later, Travelers moved to dismiss Ms. Roppo's complaint in the district court for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

In response, Ms. Roppo filed a motion for leave to file a first amended complaint and also moved to remand. The new five-count complaint alleged the following causes of action: (1) fraudulent concealment against both Travelers and its claims representative, Ms. Grace; (2) negligence against the insured, Block, for failing to answer accurately interrogatories related to the limits of his insurance policies; (3) negligence against Mr. Hitchings, for his part in responding to the same interrogatories; (4) negligence against Maisel & Associates, Mr. Hitchings's law firm, for failing to train him; and (5) a violation of 215 ILCS 5/143.24b against both Travelers and Ms. Grace.[9] In her motion to remand, Ms. Roppo asserted that the proposed new defendants all were citizens of Illinois "whose alleged conduct form[ed] a significant basis for the claims asserted."[10] Therefore, the case fell within CAFA's "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A).[11] Travelers opposed both motions.

---

[8] *See* R.1-1 at 2–3.

[9] *See* R.15; R.15-1 at 19–30.

[10] R.17 at 2 (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb)).

[11] *See id.* at 1.

In her reply brief in support of her motion to remand, Ms. Roppo proposed a new basis for remanding the action: Travelers had failed to establish CAFA's required amount in controversy, $5,000,000, and the minimum number of class members, 100.[12] She also urged that, even if the court had jurisdiction, it should exercise its discretion to remand under 28 U.S.C. § 1332(d)(3) because at least one-third of the proposed class members were Illinois citizens, "Illinois has a distinct nexus with the class members, the alleged harm and the defendants," and "the other requirements of … § 1332(d)(3) [we]re easily met."[13]

Before the court could rule on the pending motions, Ms. Roppo moved for leave to file a second amended complaint.[14] Ms. Roppo's proposed complaint consisted of eight counts: three counts of fraudulent concealment against Travelers, Maisel & Associates, and Mr. Hitchings (Counts I–III); negligence against Mr. Hitchings and Maisel & Associates (Counts IV–V); a violation of 215 ILCS 5/143.24b against Travelers (Count VI); and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") against Travelers and Maisel & Associations (Counts VII–VIII).

After more briefing, the district court ultimately granted Ms. Roppo's motion for leave to file her second amended complaint, but denied the motion to remand. The court noted

---

[12] *See* R.26 at 4–6.

[13] *Id.* at 10. Among the other requirements of 28 U.S.C. § 1332(d)(3) is that "the primary defendants are citizens of the State in which the action was originally filed."

[14] *See* R.31.

that Ms. Roppo *herself* [had] describe[d] the size of the class to be 'approximately 500 persons'"; because there was "no basis in the record that the Plaintiff's estimate was incorrect," Travelers could rely on that representation in establishing the class-number requirement.[15] Regarding the amount in controversy, the district court found it compelling that "[e]ven if the alleged additional damages of each putative class member were as small as $10,000," as Travelers had estimated, "then the aggregate damages for the putative class would nevertheless exceed the requisite amount of $5 million (*i.e.*, 500 x $10,000 = $5 million)."[16] Finally, the district court also concluded that the action did not fall within the local controversy exception because Mr. Hitchings and Maisel & Associates only defended Block in the suit against Ms. Roppo and were not "defendant[s] from whom significant relief [was] sought."[17] For the same reasons, Mr. Hitchings and Maisel & Associates were not "primary" defendants with respect to the class as a whole:

> for the discretionary exception to apply at all, the "primary" defendants must be the Illinois defendants. But … the record does not bear out that the local defendants—Hitchings and Maisel & Associates—are the "primary" defendants with regard to the class as a

---

[15] R.49 at 8.

[16] *Id.* at 10 (alteration in original) (internal quotation marks omitted) (quoting R.39 at 4).

[17] *Id.* at 12 (internal quotation marks omitted).

whole … . … Travelers is the primary defendant. Travelers, however is a citizen of Connecticut. … The discretionary exception has not been triggered.[18]

## 2.

Following the district court's denial of her motion to remand, Ms. Roppo sought permission from this court, pursuant to 28 U.S.C. § 1453(c)(1), to file an interlocutory appeal challenging the district court's denial of her motion. She claimed that the appeal, which focused on whether Travelers had established the requisite amount in controversy, was a matter of first impression and would help us develop a body of law interpreting CAFA. We denied the motion.

## 3.

After the denial of leave to appeal, Ms. Roppo sought permission from the district court to file a third amended complaint. The district court granted the motion. The third amended complaint included all eight counts set forth in the second amended complaint as well as a claim of "Bad Faith Insurance Practices" against Travelers (Count IX), a claim of negligent misrepresentation of the policy limits against Travelers (Count X), and a civil action under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Travelers (Count XI).[19]

---

[18] *Id*. at 14 (internal citation omitted).

[19] In the third amended complaint filed with the court, Ms. Roppo does not address any claims against "Maisel & Associates," as she had in her

The defendants again moved to dismiss the complaint under Rule 12(b)(6); the district court granted the motion. In explaining its decision, the court noted several deficiencies in Ms. Roppo's allegations. It noted, first of all, that the complaint lacked the necessary allegations of reliance for her fraud and negligent misrepresentation claims (Counts I–III, X). The complaint also failed to allege that Mr. Hitchings or any member of his firm owed Ms. Roppo a duty of care (Counts IV–V). The court could discern no violation of 215 ILCS 5/143.24b because Travelers had made the only disclosure required by the statute—the "amount of liability coverage under the insured's personal private passenger automobile liability insurance policy" (Count VI).[20] The court further determined that the claims under ICFA (Counts VII–VIII) failed in the absence of any allegation of "consumer nexus."[21] The claim under the Illinois Insurance Code, 215 ILCS 5/155 (Count IX), also failed because the statute did not provide penalties to third parties. Finally, turning to the RICO allegation, the court determined that Ms. Roppo had not only failed to plead adequately a RICO enterprise—a failing she conceded—but also had failed to plead with particularity the underlying predicate acts of fraud (Count XI).

Ms. Roppo moved for reconsideration. The motion was denied, and Ms. Roppo timely appealed.

---

motion for leave; instead, pursuant to the district court's order, the relevant counts were brought against Roanne Maisel doing business as Maisel & Associates. *See* R.62.

[20] R.78 at 18.

[21] *Id.* at 21.

## II

## DISCUSSION

### A.

In this appeal, Ms. Roppo first maintains that the district court lacked jurisdiction over this action because the statutory requirements of CAFA were not met. We review questions of subject matter jurisdiction, including the denial of a motion to remand, de novo. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

### 1.

Congress enacted CAFA in 2005 "to facilitate adjudication of certain class actions in federal court." *Dart v. Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). To meet these objectives, CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); *and* (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. 28 U.S.C. § 1332(d); *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 677 (7th Cir. 2006). Consistent with this purpose, CAFA also loosens removal requirements: any defendant, including in-state defendants, can remove; a defendant can remove even if all

defendants do not consent; and there is no one-year limit on the timing of removal. 28 U.S.C. § 1453(b).[22]

CAFA does not alter the burden of establishing the district court's jurisdiction. As in removal in non-CAFA diversity actions, the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied. *Hart*, 457 F.3d at 679.[23] To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in

---

[22] Ms. Roppo argues that the removal statute ought to be construed narrowly and that "there is a strong presumption in favor of remand." Appellant's Br. 13 (quoting *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007)). Although the Supreme Court has left open the possibility of such a presumption "in mine-run diversity cases," that presumption does not operate with respect to CAFA removal: "It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

[23] All of our sister circuits that have addressed this issue have reached the same conclusion. *See Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014); *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 85 (5th Cir. 2013); *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822–23 (8th Cir. 2010); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296–98 (4th Cir. 2008); *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007).

Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 553. As the Supreme Court explained in *Dart Cherokee Basin Operating Co.*, "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id*. (alteration in original) (quoting H.R. Rep. No. 100-889, p. 71 (1988)). Just as we generally accept the plaintiff's good-faith allegations of the amount in controversy to establish diversity jurisdiction,[24] "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id*.

If, however, the plaintiff challenges the defendant's amount in controversy allegation, 28 U.S.C. § 1446(c)(2)(B) instructs that removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Id.* (internal quotation marks omitted) (quoting 28 U.S.C. § 1446(c)(2)(B)). The Supreme Court has instructed that, "[i]n such a case, both sides submit proof and the court decides … whether the amount-in-controversy requirement has been satisfied." *Id.* at 554.

---

[24] *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" (alteration in original) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938))).

"We have acknowledged the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). A removing party therefore only must establish the amount in controversy by a good faith estimate that is "plausible and adequately supported by the evidence." *Id.* "The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is *in controversy* between the parties." *Id*. (emphasis added). "A removing defendant need not 'confess liability in order to show that the controversy exceeds the threshold.'" *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). If the removing party is able to meet this burden, then remand is appropriate only if the plaintiff can establish the claim is for less than the requisite amount to a "legal certainty." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006).[25]

Our cases set forth several ways that the defendant may meet this burden:

---

[25] *See also St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls[] if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible."); *Amoche*, 556 F.3d at 43 ("[T]he removing defendant must show a reasonable probability that the amount in controversy exceeds $5 million.").

by calculation from the complaint's allegations (as in *Brill*); by reference to the plaintiff's informal estimates or settlement demands (as in *Rising-Moore* [*v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006)]); or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands (*see Rubel v. Pfizer Inc.*, 361 F.3d 1016 (7th Cir. 2004)).

*Id.* at 541–42. This list, however, "is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant)." *Id.* at 542.

With these general principles in mind, we turn to an examination of the case before us.

**2.**

Our evaluation of the amount in controversy begins with the allegations of the complaint that was removed to federal court.[26] First, Ms. Roppo "estimated that the size of the class

---

[26] *See Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985 (7th Cir. 2008) (considering allegations in the complaint that the unauthorized charges were "common to all Class Members" and "that making unauthorized charges is a standard practice" in determining amount in controversy); *Andrews v. E.I. Du Pont de Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006) (looking to allegations in the complaint concerning the severity of plaintiff's injuries to determine whether the amount in controversy had been met); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) ("[T]he defendant may

consists of approximately 500 persons and is so numerous that joinder of all its members before this Court is impracticable."[27] The proposed class encompassed "all Illinois persons who made a personal injury motor vehicle claim[] for accidents occurring after August 12, 1998 and had the Travelers Insurance Company misrepresent and conceal the actual policy limits of tortfeasor by not disclosing the excess or umbrella policy."[28] The complaint further alleged that it was "an accepted practice of this insurance carrier" to engage in such misrepresentations.[29]

With respect to damages, the complaint set forth two types of damages that members of the proposed class have suffered. First were those that Ms. Roppo incurred. According to the complaint, "the insurance company would have produced settlement sums at an earlier time had the insurance companies initially honestly disclosed all applicable coverage and policy limits";[30] in other words, Ms. Roppo was deprived of the time value of the increased settlement amount. The complaint further alleged, however, that these damages paled in comparison to the second kind of damages—an actual decrease in settlement amount due to the misinformation about policy limits. The complaint explained that the "[c]lass members with the greatest damages would be Plaintiffs[,] who,"

---

rely on an estimate of the potential damages from the allegations in the complaint.").

[27] R.1-2, ¶ 22.

[28] *Id.* ¶ 2.

[29] *Id.*

[30] *Id.* ¶ 36.

unlike Ms. Roppo, "settled their case for false policy limits which were substantially less than the Plaintiffs' actual damages."[31] The complaint further stated that, "in a personal injury case, there are only three issues that matter: (1) whose fault was the injury; (2) what are the damages; and (3) what are the policy limits of the insurance coverage."[32] "Both sides know that, realistically, the Plaintiff is extremely unlikely to ever recover more than the policy limits";[33] in other words, policy limits are the de facto cap on damages. Whereas Ms. Roppo "caught the fraud in time to minimize [her] damages," that was not the case with other members of the prospective class: "There may[]be thousands of other injured parties that were seriously harmed by the insurance companies' fraud and still are unaware that they have been victimized."[34] In addition to these "compensatory damages," the complaint sought "punitive damages[ and] attorneys' fees."[35]

Along with the complaint, Travelers attached to its removal notice the affidavit of its underwriting director, who attested to other relevant facts:

> 6. As a precondition for issuing an umbrella policy, Travelers Indemnity Company of America requires policyholders in Illinois to have an underlying auto liability policy with specified minimum coverage amounts. From 1988 to present, the required minimum

---

[31] *Id.* ¶ 2.

[32] *Id.* ¶ 4.

[33] *Id.* ¶ 5.

[34] *Id.* ¶ 19.

[35] *Id.* at 22.

coverage amounts for underlying auto liability policies have been either a combined single limit of at least $300,000 (or a split of $250,000/$500,000/$50,000) or a combined single limit of at least $500,000 (or a split limit of $500,000/$500,000/$100,000).

7.  From 1988 to the present, the minimum limit of liability available under a personal umbrella policy in Illinois has been $1 million, with a maximum limit of liability of either $5 million or $10 million.[36]

Travelers used this information as the basis for two calculations which, in its view, establishes the requisite amount in controversy. First, Travelers seized on Ms. Roppo's allegation that the members of the class received a "'substantially' lower settlement amount" because they were unaware of the umbrella policy.[37] It then stated that, "[e]ven if the alleged additional damages of each putative class member were as small as $10,000, then the aggregate damages for the putative class would nevertheless exceed the requisite amount of $5 million (*i.e.*, 500 x $10,000 = $5 million)."[38] Second, Travelers calculated damages based on the increased policy limits provided by the umbrella policies: "If each of the approximately 500 putative class members sought to recover the full value of an umbrella policy, the aggregate damages for the putative class would total over $500 million (*i.e.*, 500 x $1 million minimum umbrella limit = $500 million)."[39]

---

[36] R.1-1 at 3.

[37] R.1 at 5.

[38] *Id.*

[39] *Id.*

**3.**

Ms. Roppo submits that Travelers has failed to meet its burden with respect to both the number of plaintiffs as well as the amount in controversy. She first maintains that the number (500) that she employs in her complaint was simply an estimate and that it is incumbent upon Travelers to establish that at least 100 individuals fall within this class. We cannot accept this view.

Travelers may rely on the estimate of the class number set forth in the complaint. Illinois Supreme Court Rule 137(a) requires counsel to sign pleadings filed in state court, and that signature certifies "that[,] to the best of [counsel's] knowledge, information, and belief formed after reasonable inquiry[,] it is well grounded in fact." Travelers should be able to take counsel at his word. Although it is true that the complaint states that "discovery will be required to determine how many members there are in the class," the complaint also says that the 500 estimate is conservative.[40] The complaint alleges that the class could include plaintiffs whose injuries date back to 1988.[41] Additionally, it notes that "[t]here may[]be thousands of other injured parties."[42] Given these representations, and the underlying duty of counsel in making them, we believe that Travelers may rely on them.

With respect to the amount in controversy, Ms. Roppo maintains that "the underlying policy limits do not establish

---

[40] R.1-2, ¶ 22.

[41] *Id.*

[42] *Id.* ¶ 19.

the amount of damages to any members of the class. One simply cannot tell from policy limits the amount of damages suffered by a class member."[43] Instead, she believes that the district court should have required Travelers to establish how many of its insureds' cases "involved the fraudulent concealment of the umbrella policy from the claimant" and to aggregate the damages attendant to those claims.[44]

Ms. Roppo's arguments are untenable, given her allegations in the complaint. The complaint emphasizes the importance of policy limits in determining settlement values: they represent the maximum recovery that an injured party likely will receive.[45] Given that, over the relevant time period, Travelers's minimum available umbrella coverage was $1,000,000, injured parties who made claims against Travelers's insureds during that time would have had a minimum of an additional $1,000,000 in potential recovery. If there were even five members of the proposed class to whom the policy limits were not revealed, the amount in controversy under CAFA would be met based just on compensatory damages. However, Ms. Roppo also seeks punitive damages, which factor into the amount-in-controversy calculation, *see, e.g.*, *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011). Given that courts in Illinois have affirmed jury awards for fraud with multipliers higher than five, *see Keeling*

---

[43] Appellant's Br. 18.

[44] *Id*. at 19.

[45] In Ms. Roppo's own case, the revelation of the umbrella policy increased the settlement amount $250,000 above the automobile policy limit. *See* R.63, ¶ 52.

*v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011), a single class member with compensatory damages of $1 million could be awarded as much as $5 million in punitive damages.[46] Moreover, according to the complaint, "there may[]be thousands" of individuals that fall into this category,[47] because it was "an accepted practice of this insurance carrier" to engage in such misrepresentations concerning umbrella policy limits, as far back as 1988.[48]

Indeed, we see little difference between the present case and *Spivey*. There, the plaintiff purported to represent individuals "who d[id] business with Vertrue, a marketer that offers discounts to customers who use its services." *Spivey*, 528 F.3d at 983. The plaintiff alleged that "Vertrue 'systematically' submit[ted] unauthorized charges." *Id*. Vertrue sought removal under CAFA, and with respect to amount in controversy, it came forth with evidence that "its billings, for 4 of the 22 programs in Illinois alone, c[a]me to almost $7 million." *Id*. at 985. Despite this evidence, the district court remanded because "Vertrue did not concede that more than $5 million in charges was unauthorized." *Id*. On appeal, we reversed and explained that "the statute does not make federal jurisdiction depend on how much the plaintiff is sure to recover. The question is what amount is 'in controversy.'" *Id*. We observed that "[t]he complaint alleges that Spivey's credit card was

---

[46] *See also Hunt v. DaVita, Inc.*, 680 F.3d 775, 777 (7th Cir. 2012) (considering punitive damages in the amount-in-controversy calculation and describing a "punitive-to-compensatory damages ratio of two or three to one" as "modest").

[47] R.1-2, ¶ 19.

[48] *Id*. ¶ 2.

charged without authorization and that Vertrue's practices are 'common to all Class Members.' The complaint also alleges that making unauthorized charges is a standard practice at Vertrue." *Id.* "Spivey's allegations," we therefore concluded, "put into 'controversy' the propriety of all of Vertrue's charges, and the complaint demands refunds for all unauthorized charges." *Id.* at 985–86. To hold otherwise would have required Vertrue to "'confess liability in order to show that the controversy exceeds the threshold'"—something the statute did not require the defendant to do. *Id*. at 986 (quoting *Brill*, 427 F.3d at 449).

Here, Ms. Roppo alleged that it was "an accepted practice" over almost thirty years to engage in misrepresentations concerning the existence of umbrella coverage.[49] Moreover, she alleged that these policy limits represented the de facto maximum recovery injured individuals could receive on their claims. Travelers came forward with undisputed evidence that those additional policy amounts were at least $1,000,000 per insured. Based on these allegations and evidence, "a factfinder *might* conceivably lawfully award" in excess of $5 million dollars. *Hammond v. Stamps.com, Inc*., 844 F.3d 909, 912 (10th Cir. 2016) (emphasis in original).

**B.**

Ms. Roppo added two additional defendants in her second amended complaint: Mr. Hitchings, Block's defense attorney in the underlying personal injury action, and his employer, Ms. Maisel, doing business as Maisel & Associates.

---

[49] *Id.*

Ms. Roppo contends that the addition of these defendants triggered one or both of CAFA's "local controversy" exceptions, 28 U.S.C. §§ 1332(d)(3) (discretionary) and (d)(4) (mandatory), and therefore the district court either lacked jurisdiction or should have declined jurisdiction over the proposed class action.

Although CAFA "substantially" expands "federal court jurisdiction over class actions," *Hart*, 457 F.3d at 681, a district court must decline to exercise jurisdiction over a class action in which:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

> (II) at least 1 defendant is a defendant—

>> (aa) from whom significant relief is sought by members of the plaintiff class;

>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

>> (cc) who is a citizen of the State in which the action was originally filed; and

> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A). The "local controversy" exception is narrow, and the legislative history of CAFA reveals "a strong preference that interstate class actions should be heard in a federal court if properly removed." *Hart*, 457 F.3d at 681 (internal quotation marks omitted).[50] Plaintiffs seeking to remand under the "local controversy" exception bear the burden of establishing, by a preponderance of the evidence, that one of the CAFA exceptions applies and that the federal court either should or must remand the action to the state court. *See id.* at 676.

## 1.

Even if we assume that greater than two-thirds of the proposed class's members are citizens of Illinois (the state in which the action originally was filed), Ms. Roppo still cannot meet the requirements of § 1332(d)(4)(A)(i)(II). For the local controversy exception to apply, Ms. Roppo must establish that at least one of the Illinois defendants "is a defendant … from whom significant relief is sought by members of the plaintiff class," and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff

---

[50] *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (explaining that the local controversy exception is narrow and "all doubts" should be "resolved 'in favor of exercising [federal] jurisdiction over the case'").

class." *Id.* "[T]he significant basis provision requires at least one local defendant whose alleged conduct forms a significant basis for *all the claims* asserted in the action.*" Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) (emphasis added).[51]

Neither Mr. Hitchings nor Ms. Maisel "is a defendant from whom significant relief is sought." Indeed, according to the complaint, Travelers "instructed" Mr. Hitchings and Maisel & Associates not to disclose umbrella and excess policies of their insureds.[52] These allegations highlight that the gravamen of this action is directed at Travelers, a citizen of Connecticut, not its attorneys. At no point does Ms. Roppo deny that, if she prevails, Travelers will face the brunt of liability.

Moreover, Ms. Roppo has not asserted that Mr. Hitchings or Ms. Maisel (doing business as Maisel & Associates) has injured a significant portion of the class. Although it is clear

---

[51] *See also Opelousas Gen. Hosp. Auth. v. Fairpay Solutions, Inc.*, 655 F.3d 358, 362 (5th Cir. 2011) (concluding that the local controversy exception did not apply when the plaintiff failed to show that the local defendant's conduct affected "all or a significant portion of the putative class"); *Evans*, 449 F.3d at 1167 (refusing to apply the "local controversy" exception when the plaintiff did not show that "a significant number or percentage of putative class members" had claims against the local defendants); S. Rep. 109-14, at 40 (2005) ("[T]he local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership) … .").

[52] R.56 at 21 (¶¶ 52, 53); R.63 at 25 (¶¶ 64, 65). Ms. Roppo's second and third amended complaints begin each new count at the same paragraph number. As a result, we have included cross-references to page and paragraph numbers where necessary throughout the opinion.

from the complaint that Mr. Hitchings defended Block in
*Ms. Roppo's* personal injury action, the complaint does not
provide any basis to conclude that these defendants made
similar misrepresentations to a significant portion of the
plaintiff class.

**2.**

Alternatively, Ms. Roppo asserts that the district court
should have declined to exercise jurisdiction under 28 U.S.C.
§ 1332(d)(3). This discretionary exception provides that a dis-
trict court "may, in the interests of justice … , decline to exer-
cise jurisdiction" over a class action when "the primary de-
fendants are citizens of the State in which the action was orig-
inally filed" and "greater than one-third but less than two-
thirds" of the class members "are citizens of the State in which
the action was originally filed." 28 U.S.C. § 1332(d)(3).

We cannot accept Ms. Roppo's contention that this excep-
tion is applicable to her proposed class. In order for the dis-
cretionary exception to apply, the "primary" defendants must
be the Illinois defendants—here, Mr. Hitchings and
Ms. Maisel. Neither the second amended complaint nor the
third amended complaint allege that these are the primary de-
fendants; rather, as previously discussed, the gravamen of the
complaint suggests that *Travelers* is the primary defendant.
Because Travelers is a citizen of Connecticut, the district court
correctly concluded that this action is not a "local contro-
versy" and therefore that it should not decline to exercise ju-
risdiction over the action.

## C.

Travelers submits that, even if the district court did not have jurisdiction under CAFA, Ms. Roppo's RICO count provided an alternative basis for federal jurisdiction.[53] Ms. Roppo

---

[53] Following the district court's denial of her motion to remand, Ms. Roppo sought review pursuant to 28 U.S.C. § 1453(c)(1), which we denied. *See supra* at 9. She maintains that she interpreted our denial of leave to appeal as "strongly suggesting" that the district court "got it right" in determining that it had jurisdiction under CAFA. Appellant's Br. 11 (internal quotation marks omitted) (quoting *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 556). "In practical effect," she continues, our "denial of review established the law not simply for this case but for future CAFA removals sought by defendants." *Id*. (internal quotation marks omitted) (quoting *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 556). She further notes that, in *Dart Cherokee*, the Supreme Court determined that the Tenth Circuit had abused its discretion in denying the petition for review. Although she does not state so explicitly, Ms. Roppo apparently believes that our denial of review, like that of the Tenth Circuit in *Dart Cherokee*, was an abuse of discretion. She continues that, had we not lulled her into believing that jurisdiction was secure under CAFA, she never would have included a RICO claim and thus there would be no alternative basis for federal subject matter jurisdiction.

Ms. Roppo's premise is faulty: her situation and the facts of *Dart Cherokee* are readily distinguishable. In *Dart Cherokee*, the district court denied removal on the basis that the defendant had failed to proffer evidence of the amount in controversy with the notice of removal. The district court had read Tenth Circuit precedent as holding "that reference to factual allegations or evidence outside of the petition and notice of removal is not permitted to determine the amount in controversy." *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 552 (internal quotation marks omitted). Consequently, when the defendant submitted detailed calculations as to the amount in controversy after the notice of removal, the district court refused to consider them and ordered a remand. The Tenth Circuit then denied review of the remand order. The Supreme Court observed that "[i]n practical effect, the Court of Appeals' denial of review established the law

maintains, however, that Travelers cannot now assert that her RICO claim provides a basis for jurisdiction because it previously took the position that it was "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise

not simply for this case, but for future CAFA removals sought by defendants in the Tenth Circuit" because "any diligent attorney … would submit to the evidentiary burden rather than take a chance on remand to state court." *Id*. at 556 (internal quotation marks omitted). Ms. Roppo's petition for leave to appeal the district court's denial of her motion to remand, however, did not raise the question of a pleading standard that, in the absence of immediate review, may not make its way back to the appellate court.

Indeed, the issues presented by Ms. Roppo's petition for leave to appeal were unique to her and could have been raised and reviewed in due course. In her petition, Ms. Roppo claimed that the district court had erred in concluding (1) that Travelers had met its burden of establishing the amount in controversy and (2) that she was not entitled to limited discovery on the issue of the involvement of Maisel & Associates. *See Roppo v. The Travelers Cos*., No. 14-8018, App. R.1-1. When we previously have granted leave to appeal under 28 U.S.C. § 1453(c)(1), we have done so in cases involving novel or unsettled questions of law. *See, e.g*, *Bullard v. Burlington N. Santa Fe Ry. Co*., 535 F.3d 759, 761 (7th Cir. 2008) ("We grant this petition, because the legal issue is novel. It has not been addressed in this or any other circuit."). Ms. Roppo's appeal did not involve such a question.

In sum, neither *Dart Cherokee* nor our own case law required us to review immediately the district court's denial of Ms. Roppo's motion to remand. Additionally, our denial of review did not lull Ms. Roppo into any false belief concerning the merits of Travelers's CAFA allegations.

completely devoid of merit as not to involve a federal controversy."[54] Having prevailed on that argument below, she continues, Travelers now cannot reverse course.

We have reviewed Travelers's submissions to the district court. Although it vigorously argued that Ms. Roppo had not pleaded a proper RICO claim, it never made the argument that the flimsiness of Ms. Roppo's allegations deprived the court of jurisdiction.[55] Indeed, it would have been an odd argument for Travelers to make given that the district court already had determined that it had subject matter jurisdiction under CAFA.

At oral argument, however, we articulated the concern that, in the absence of CAFA jurisdiction, Ms. Roppo's RICO allegations were so lacking in substance as to deprive the district court of subject matter jurisdiction. We therefore requested that the parties address through supplemental briefing the issue whether Ms. Roppo's RICO claim met the requirement of substantiality. *See Bell v. Hood*, 327 U.S. 678, 681–

---

[54] Appellant's Br. 28 (internal quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

[55] In its Reply in Support of Defendants' Motion to Dismiss, Travelers did argue that the district court should not grant Ms. Roppo an opportunity "to file a Fourth Amended Complaint on grounds of undue delay and futility." R.76 at 11. It submitted that Ms. Roppo had not shown the court how she could cure the deficiencies in her complaint by way of amendment. The fact that it believed that Ms. Roppo could not state a viable claim for relief under RICO, however, is not a concession that her claim falls into that category of "extraordinary" cases where the federal claim is so "obviously[] or plainly insubstantial or frivolous" as to deprive the federal court of jurisdiction. *See Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989) (internal quotation marks omitted).

82 (1946). Having considered their arguments, we now conclude that, although the district court correctly dismissed Ms. Roppo's RICO claim, her allegations nevertheless are sufficient to support, and supply an independent basis for, federal jurisdiction.

### 1.

"The Supreme Court has repeatedly held that 'federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1256 (7th Cir. 1994) (quoting *Hagans v. Lavine,* 415 U.S. 528, 536 (1974)). This "substantiality doctrine" requires that a district court "conduct an initial review of the face of the complaint to determine whether the merits are sufficiently substantial to engage the subject matter jurisdiction of the court." *Id*. (citing *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1180–82 (7th Cir. 1989)).

"Through its choice of language, … the Court has … made clear that only the most extreme cases will fail the jurisdictional test of substantiality." *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir. 1996). "A claim must be 'wholly insubstantial,' or 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion,' to merit dismissal under the substantiality doctrine." *Gammon*, 27 F.3d at 1256 (citing *Hagans*, 415 U.S. at 537). "Although similar to the standard for dismissal for failure to state a claim upon which relief can be granted under [Federal Rule of Civil Procedure] 12(b)(6), the standard for dismissal for want of subject matter

jurisdiction is considerably more rigorous." *Id.* "A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Hagans*, 415 U.S. at 538 (quoting *Ex parte Poresky*, 290 U.S. 30, 32 (1933)). If the district court concludes that the claim, in fact, is "wholly insubstantial and frivolous," it must dismiss the complaint for lack of subject matter jurisdiction. *Bell*, 327 U.S. at 682–83. "Absent such frivolity, 'the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" *Shapiro v. McManus*, 136 S. Ct. 450, 456 (2015) (quoting *Bell*, 327 U.S. at 682)).

## 2.

We do not believe that Ms. Roppo's RICO claim falls within this narrow category of "most extreme cases." *LaSalle Nat'l Trust*, 76 F.3d at 143. Although pleaded deficiently, especially when evaluated against the heightened pleading requirements of Federal Rule of Civil Procedure 9(b),[56] Ms. Roppo's RICO allegations are not so wholly without legal foundation as to fail the test for substantiality.

---

[56] Allegations of fraud in a RICO complaint are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1988). "[A] RICO plaintiff 'must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud.'" *Id*. (alteration in original).

Ms. Roppo alleges a civil violation of 18 U.S.C. § 1962(c), which states: "(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1964 of Title 18 further limits the population of civil RICO plaintiffs to persons who have been "injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Thus, to allege a violation of § 1962(c), Ms. Roppo must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotation marks omitted) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Additionally, to have standing, Ms. Roppo must allege that she "has been injured in h[er] business or property by the conduct constituting the violation." *Sedima, S.P.R.L.*, 473 U.S. at 496.

### a.

Initially, therefore, Ms. Roppo must "identify a 'person'— *i.e.*, the defendant—that is distinct from the RICO enterprise." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). Before the district court, Travelers argued that Ms. Roppo had not alleged an enterprise separate from

Travelers itself.[57] Ms. Roppo maintained that Travelers and Maisel & Associates together constituted the "enterprise."[58] She admitted, however, that she had not set forth this relationship sufficiently and sought permission to file a fourth amended complaint to add those allegations.[59]

Although Ms. Roppo fails to connect the legal dots between Travelers and its outside counsel, the possibility that those players, together, could form a RICO enterprise is not without support in case law. One of our sister circuits has recognized that a corporation and its outside counsel can constitute an enterprise under RICO. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 362 (9th Cir. 2005) (observing that "[j]ust as a corporate officer can be a person distinct from the corporate enterprise, DuPont is separate from its legal defense team" and holding, therefore, that "the district court erred in concluding that Plaintiffs failed to allege a distinct RICO enterprise"). Moreover, the Supreme Court recently clarified what is required to show an "association-in-fact" enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v.*

---

[57] *See* R.69 at 23–24.

[58] *See* R.74 at 33 (internal quotation marks omitted).

[59] *See id.* On appeal, Ms. Roppo does not contend that the district court abused its discretion in denying her the opportunity to file a fourth amended complaint, *see, e.g., Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 854 (7th Cir. 2017) ("We review for abuse of discretion the district court's denial of Mulvania's motion to amend her complaint."), *petition for cert. filed*, -- U.S.L.W. ---- (U.S. Aug. 16, 2017) (No. 17-245), nor would such an argument be persuasive.

*United States*, 556 U.S. 938, 946 (2012). Nothing in these re-
quirements forecloses a RICO enterprise comprised of a cor-
poration and its outside counsel.[60] We cannot conclude, there-
fore, that Ms. Roppo's allegations of a RICO enterprise, alt-
hough lacking in detail, are wholly insubstantial or frivolous.

### b.

Turning to the remaining RICO elements, "to satisfy the
'conduct' element, … a plaintiff must allege that the defend-
ant 'participated in the operation or management of the enter-
prise itself,' and that the defendant played 'some part in di-
recting the enterprise's affairs.'" *Goren v. New Vision Int'l, Inc.*,
156 F.3d 721, 727 (7th Cir. 1998) (quoting *Reves v. Ernst &
Young*, 507 U.S. 170, 179 (1993)). Additionally, the conduct
cannot be an isolated incident. A pattern of racketeering ac-
tivity consists of at least two violations of a specified list of
criminal laws. *See Goren*, 156 F.3d at 728. Ms. Roppo alleges
wire and mail fraud, which require (1) "the defendant's par-

---

[60] *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997), also does not
foreclose this possibility. In *Fitzgerald*, we held that the "'Chrysler family'
consisting of subsidiaries of the Chrysler Corporation engaged in various
facets of production, financing, and marketing of Chrysler automobiles,
plus Chrysler's dealers, plus trusts controlled by Chrysler" was not suffi-
ciently distinct from the Chrysler Corporation, the named defendant, to
be recognized as a RICO enterprise. *Id*. at 226. Here, however, there is no
apparent corporate relationship between Travelers and Maisel & Associ-
ates; rather they are distinct legal entities. *See George v. Urban Settlement
Servs.*, 833 F.3d 1242, 1249–50 (10th Cir. 2016) (distinguishing *Fitzgerald*
on the ground that it involved related corporate entities, but the plaintiffs'
proposed RICO enterprise involved "two separate legal entities").

ticipation in a scheme to defraud"; (2) "defendant's commission of the act with intent to defraud"; and (3) the use of wires—or mail—"in furtherance of the fraudulent scheme." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015) (internal quotation marks omitted). These violations must "exhibit 'continuity plus relationship.' … Related predicate acts have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 240 (1989)).

In her amended complaint, Ms. Roppo alleges that "there is a widespread practice within the Travelers Companies … of <u>not</u> disclosing excess and umbrella policies,"[61] that Travelers is incentivized not to disclose policy limits, and that it may have instructed its outside counsel to misrepresent, or not disclose, the existence of excess or umbrella policies.[62] Additionally, she avers that Travelers intentionally misrepresented, or failed to reveal when under a legal obligation to do so, relevant policy limits of its insureds. It did so through written communications sent by its attorneys to counsel for injured parties and through oral communication over the telephone.[63] And it did so with the intent of inducing injured parties to

---

[61] R.63 ¶ 32 (emphasis in original).

[62] *Id*. at 25 (¶¶ 64–65).

[63] *See id.* at 23–26 (¶¶ 54–71), 63 (¶ 58).

rely on these statements and settle their claims for less than they would if the actual coverage limits were revealed.[64]

In general terms, Ms. Roppo's complaint speaks to the elements of a RICO cause of action by alleging that Travelers was a key player in a fraudulent scheme to communicate false policy limits to injured parties, through both interstate wires and the mail, in order to reduce its payouts under its policies. Her complaint may not be sufficiently specific to meet the heightened pleading requirements of Rule 9(b), *see Goren*, 156 F.3d at 729 (setting forth the detailed pleading requirements for a RICO claim based on predicate acts of wire fraud), as Ms. Roppo readily acknowledges.[65] Nevertheless, her allegations of conduct and racketeering activity are neither wholly insubstantial nor legally unsound.

### c.

Finally, to obtain relief under RICO, indeed to have standing to pursue a RICO cause of action, a plaintiff must allege that she has been injured in her "business or property by reason of" the RICO violation. 18 U.S.C. § 1964(c). We have explained that "[t]he terms 'business or property' are … words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). Thus, "a civil RICO action cannot be premised solely upon personal or emotional injuries." *Id.*

---

[64] *Id*. at 24 (¶ 62).

[65] *See* R.74 at 33 ("Travelers' other challenges to Count XI are acknowledged … .").

In her RICO count, Ms. Roppo requests damages for "[e]motional distress" as well as "[a]ggravation and inconvenience."[66] These clearly are not available under § 1964(c) and will not support standing to pursue a RICO claim. Nevertheless, Ms. Roppo also alleges that, because of Travelers's misrepresentations, there was a delay in settling her claim.[67] Consequently, she lost the time value of her settlement over the months that Travelers (allegedly) was perpetrating the fraud. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (recognizing that a party had "incurred a loss" of the time value of $10,000).[68] Thus, she has alleged an injury to property resulting from the alleged RICO violation.

In sum, although, in some respects, Ms. Roppo's RICO allegations do not satisfy the heightened pleading requirement of Rule 9(b), hers is not among "the extreme cases" in which the federal claim is so "obviously frivolous" that it cannot support our exercise of jurisdiction. Ms. Roppo's RICO claim, therefore, provides an alternative basis for our exercise of jurisdiction over her complaint.

---

[66] R.63 at 63–64 (¶ 60) (internal quotation marks omitted).

[67] *See id.* at 64 (¶ 60).

[68] *See also Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 519–20 (7th Cir. 1999) ("'Compensation deferred is compensation reduced by the time value of money.'" (quoting *In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997)); *Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546, 552–53 (7th Cir. 1988) (explaining that the time value of money requires compensation because, during the delay in compensation, one party "has the benefit of the other's purse"). This loss may have been taken into account in Ms. Roppo's settlement of her personal injury claim. However, the settlement agreement is not part of the record.

## D.

Having determined that the district court had jurisdiction, we now turn to whether the district court erred in dismissing Ms. Roppo's third amended complaint. We review de novo a district court's decision to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). We "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible*, 799 F.3d at 639. A complaint will survive a motion to dismiss for failure to state a claim if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[a] plaintiff can plead herself out of court by alleging facts that show she has no legal claim." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016).

## 1.

Ms. Roppo first asserts that the district court erred in dismissing her fraud and negligent misrepresentation claims. Counts I, II, and III of Ms. Roppo's third amended complaint allege that Travelers and its attorneys fraudulently misrepresented Block's policy limits. In the alternative, Count X asserts that Travelers negligently misrepresented the policy limits. Both parties agree that, under Illinois law, reliance is an element of both fraudulent and negligent misrepresentation. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 722–23 (7th Cir. 2008) ("A claim of fraud requires proof that the victim of the fraud relied on the representations that

he contends are fraudulent." (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 681 (Ill. 1989)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) ("[T]o state a claim for negligent misrepresentation under Illinois law, a party must allege … 'reliance on the truth of the [false] statement'" (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006))). Without reliance, a plaintiff "cannot have been hurt by the fraud." *Extra Equipamentos*, 541 F.3d at 723.

As a result, Ms. Roppo's complaint must allege facts which suggest that she plausibly relied on defendants' alleged misrepresentation. *See Iqbal*, 556 U.S. at 678. The defendants maintain that Ms. Roppo has pleaded herself out of court because the complaint states that Ms. Roppo's attorney "repeatedly expressed uncertainty" about the lack of an umbrella policy.[69] According to Travelers, this statement suggests that Ms. Roppo did not rely on the misrepresentations regarding the policy limits because her attorney did not believe them.

We agree. A plaintiff must believe the alleged misrepresentation to be true in order to state reliance. *See Smith v. Duffey*, 576 F.3d 336, 339 (7th Cir. 2009).[70] Even under Rule 8's

---

[69] R.63, ¶ 49.

[70] *See also Schmidt v. Landfield*, 169 N.E.2d 229, 231–32 (Ill. 1960) ("In all cases where it is sought to hold one liable for false representations, the question necessarily arises whether … the plaintiff had a right to rely upon them. In determining this question, the representations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of such as he might have availed himself by the exercise of ordinary prudence." (internal quotation marks omitted)).

more relaxed pleading standard (which only applies to Ms. Roppo's negligent misrepresentation claim),[71] the allegations in the third amended complaint do not pass muster. Indeed, the third amended complaint makes clear that neither Ms. Roppo nor her attorney believed Travelers's and Mr. Hitchings's representations regarding Block's policy limits: the complaint alleges that Ms. Roppo's attorney was so "uncertain[]" about the represented policy limits that he continued to push Travelers and its employees to disclose the possibility of an umbrella policy.[72] Accordingly, we conclude that Ms. Roppo has pleaded herself out of court with respect to her fraudulent and negligent misrepresentation claims.

**2.**

Regarding her negligence claims against Mr. Hitchings (Count IV) and his employer, Ms. Maisel, doing business as Maisel & Associates (Count V), Ms. Roppo contends that the district court erred in determining that they did not owe Ms. Roppo a duty of care. According to Ms. Roppo, both Mr. Hitchings and his employer owed her a duty of care because she was entitled to the protections of Block's automo-

---

[71] *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (applying Illinois law and holding that a claim for negligent misrepresentation "is *not* governed by the heightened pleading standard of Rule 9(b)" (emphasis in original)). Federal Rule of Civil Procedure 9(b) requires that claims of fraudulent misrepresentation be pleaded with particularity. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 723–24 (7th Cir. 2008).

[72] R.63, ¶ 49.

bile liability policy and therefore was a beneficiary of a cognizable relationship under Illinois law between a plaintiff and a defendant's attorney. In short, she believes that a defense attorney's duty as an officer of the court translates into a duty to Ms. Roppo to use reasonable care in answering her discovery inquiries.

In Illinois, an attorney generally owes a duty of care only to his client and not to third parties. *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004). This general rule is meant to protect the attorney-client relationship: "Since an attorney 'must represent his client with zeal and undivided loyalty in adversarial matters,' he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability." *Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) (quoting *Gold v. Vasileff*, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987)). A "narrow exception," however, extends an attorney's duty of care to third parties when the attorney was "hired by the client specifically for the purpose of benefitting that third party." *Kopka*, 821 N.E.2d at 723. For this exception to apply in adversarial proceedings, "there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982).

*Pelham* is a good illustration of just how narrow this exception is. In *Pelham*, the defendant had been retained to represent Loretta Ray in a divorce action against her husband, George. The plaintiffs in the action were the Rays' children, all of whom were minors at the time of the divorce. The negotiated divorce decree required George to maintain all four of

his children as the primary beneficiaries of a $10,000 life in-
surance policy. Later, however, George remarried and named
his second wife as the beneficiary, and she received the pro-
ceeds after his death. The children then sued Loretta's lawyer
claiming that, given this provision, they were intended to
benefit directly from his services. The court disagreed:

> Applying the "intent to directly benefit" test to the
> facts alleged in the complaint, it is clear that the plain-
> tiffs herein are not in the nature of direct third-party
> beneficiaries. The attorney was hired primarily for the
> purpose of obtaining a divorce, property settlement,
> and custody of the minor children for Loretta Ray, not
> to represent her children's interest. The plaintiffs
> herein are, at best, only incidental beneficiaries in this
> situation. That George Ray name the children as bene-
> ficiaries of the policy cannot be described as the pri-
> mary reason that Loretta Ray retained the defendant to
> be her attorney.

*Id.* at 100–01.

Applying the "intent to directly benefit" test to the facts
alleged in the third amended complaint, it is clear that
Ms. Roppo is not a direct third-party beneficiary. Ms. Roppo
asserts that she was injured by Mr. Hitchings's negligence
during his representation of Block in the underlying personal
injury action. In that context, Mr. Hitchings's primary duty
was to protect the interests of his client, Block, against the
claims asserted by Ms. Roppo. Although Ms. Roppo certainly
may have benefitted from part of Mr. Hitchings's representa-
tion of Block, in the same way that the Ray children may have
benefitted from the divorce lawyer's representation of their
mother, Ms. Roppo was not *a direct third-party beneficiary* of

Mr. Hitchings's relationship with Block. Mr. Hitchings's services were not secured for her benefit. Moreover, we agree with the district court's concern that "[e]xpanding an attorney's duty of care to adversaries on the basis of discovery violations would swallow the 'narrow' intent-to-directly-benefit exception."[73] Also, as the district court noted, such an expansion could undermine the attorney-client relationship. *See id.* at 101 ("We refuse to create such a wide range of potential conflicts by imposing such duties upon an attorney in favor of a nonclient, unless the intent to benefit the third party is clearly evident."); *Schechter*, 627 N.E.2d at 109 ("Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons … ." (emphasis removed) (internal quotation marks omitted)).

In Ms. Roppo's negligence claim against Ms. Maisel, individually, and against Maisel & Associates, Ms. Roppo asserts that Ms. Maisel, and by extension her law firm, failed to train or supervise Mr. Hitchings. Under Illinois law, Ms. Roppo "must prove that the employer's breach—not simply the employee's malfeasance—was a proximate cause of the plaintiff's injury." *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010). But Ms. Roppo also must demonstrate that Mr. Hitchings's employer owed her a duty of care. *Id.* at 347 (holding that an employer's duty to train or supervise "is best analyzed under principles generally applicable to negligence cases"). Under Illinois law, "'[t]he touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an

---

[73] R.78 at 13 (quoting *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004)).

obligation of reasonable conduct for the benefit of the plaintiff.'" *Id.* (quoting *Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010)).

The allegations of the complaint, taken as true, simply do not establish that the firm owed a duty of care to Ms. Roppo. As Mr. Hitchings's employer, Maisel & Associates was retained to represent Block, not Ms. Roppo, in the underlying personal injury action. Nothing in the complaint suggests that Ms. Roppo's relationship with the firm was any different than her relationship with Mr. Hitchings. Because both the Maisel-Block and Hitchings-Block relationships were meant to defend Block in an adversarial proceeding against Ms. Roppo, and because Ms. Roppo has not established that she was an intended direct beneficiary of that relationship, we conclude that neither party owed her a duty of care.

**3.**

Turning to Ms. Roppo's claim under 215 ILCS 5/143.24b (Count VI), the Illinois Insurance Code requires an insurer to disclose the policy limits of its insured to someone making a claim against the insured's policy under certain circumstances. As is relevant to Ms. Roppo's claim, when an insured is involved in a "vehicular accident," an insurance company must "disclose the dollar amount of liability coverage under the insured's personal private passenger automobile liability insurance policy" when the claimant requests it. *Id.* To make a request for the policy limits, a claimant (or her representative) must provide the insurer with "(a) a certified letter … which requests such disclosure and (b) a brief description of

the nature and extent of the injuries, accompanied by a statement of the amount of medical bills incurred to date and copies of medical records." *Id.* Ms. Roppo alleges that Travelers violated this provision of the Insurance Code when it did not disclose Block's umbrella policy to her.[74]

The district court concluded that (1) Ms. Roppo's request did not trigger Travelers's disclosure; and (2) Travelers disclosed all that was required under Illinois law. First, it is clear from the plain text of § 143.24b that a claimant must provide two things to trigger disclosure: a certified letter requesting the disclosure; *and* "a brief description of the nature and extent of the injuries, accompanied by a statement of the amount of medical bills incurred to date and copies of medical records." 215 ILCS 5/143.24b. Although the complaint states that Ms. Roppo's attorney sent a certified letter to Travelers on August 9, 2011, the complaint does not assert that the letter described Ms. Roppo's injuries or included her medical records. In fact, Ms. Roppo concedes that she did not provide Travelers with that information.[75]

Ms. Roppo counters that Travelers has waived the right to challenge the contents of her certified letter because Travelers acknowledged that information regarding her medical needs was not yet available in response to Ms. Roppo's disclosure

---

[74] Illinois courts have not addressed whether § 143.24b of the Illinois Insurance Code supplies a private right of action. *See Demarco v. CC Servs. Inc.*, No. 1-15-2933, 2017 WL 1148752, at *10–11 (Ill. App. Ct. Mar. 24, 2017). Because we conclude that Travelers did not violate this provision of the Code, we do not resolve this issue.

[75] R.74 at 24.

request and, nevertheless, it disclosed Block's automobile policy. Under Illinois law, waiver "arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004). "[T]he evidence must show a clear, unequivocal[,] and decisive act of a party demonstrating an intent to waive the known right." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 651 (7th Cir. 2014) (internal quotation marks omitted) (applying Illinois law).

We do not agree with Ms. Roppo's contention that Travelers's acknowledgment of her missing medical records constituted waiver. In its response to Ms. Roppo's certified letter, the complaint asserts that a Travelers claims representative acknowledged the absence of medical records from the request and stated: "While we realize that medical specials and narratives are not available now, we are in need of information so that our file will reflect the accurate injury and medical information for this claim."[76] We read this response as *preserving* Travelers's rights, not waiving them: the claims representative specifically asked Ms. Roppo to provide the company with the required medical records as soon as possible. Because the complaint does not support an inference that Travelers acted inconsistently with preserving its statutory rights, we conclude that Travelers has not waived the argument that Ms. Roppo failed to comply with § 143.24b.

Even if Ms. Roppo's request had triggered this disclosure, the district court was correct to dismiss this claim because Travelers disclosed the policy limits of Block's *automobile* pol-

---

[76] R.63, ¶ 44.

icy, as required under this provision of the Illinois Code. Under § 143.24b, the insurance company must provide the "amount of liability coverage under the insured's personal private *passenger automobile liability* insurance policy" upon the claimant's request. 215 ILCS 5/143.24b (emphasis added).

Ms. Roppo admits that Travelers disclosed the limits of Block's *automobile* policy; 215 ILCS 5/143.24b does not require more. Umbrella liability policies are different from automobile policies under Illinois law. *See Hartbarger v. Country Mut. Ins. Co.*, 437 N.E.2d 691, 694 (Ill. App. Ct. 1982) ("[A]n umbrella liability policy is entirely different from an automobile policy."); *Mei Pang v. Farmers Ins. Grp.*, 10 N.E.3d 301, 305 (Ill. App. Ct. 2014) ("In Illinois, umbrella policies and primary auto policies are distinct policies."). The Insurance Code also defines a "[p]olicy of automobile insurance" as separate from "other policies of personal lines" of liability insurance. *See* 215 ILCS 5/143.13(a), (c). We therefore cannot infer that the plain language of § 143.24b, which requires insurers to disclose "automobile" insurance policies, *actually* requires disclosure of both *automobile* and *umbrella* insurance policies. Travelers only was required to disclose Block's automobile policy limits, which it did. Because Travelers did not violate § 143.24b, Ms. Roppo cannot state a claim under that provision, assuming one exists.[77]

### 4.

Ms. Roppo also contends that the district court erred in dismissing her ICFA claims (Counts VII and VIII), asserting

---

[77] *See supra* note 74.

she is "a consumer" of Block's policy with Travelers because she became a direct beneficiary of the policy following the accident.[78] The ICFA prohibits "unfair or deceptive acts or practices, including … fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" in the "conduct of any trade or commerce." 815 ILCS 505/2. Ms. Roppo has not invited our attention to any Illinois case extending this statute, which the state courts have held applies to consumer transactions or those having a consumer nexus, *see Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436–37 (7th Cir. 1996),[79] to the discovery

---

[78] Appellant's Br. 42.

[79] As noted in the text, some Illinois courts have held that only a "consumer" may bring an action under ICFA. *See Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003); *see also* 815 ILCS 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). Some Illinois courts also have allowed plaintiffs to proceed with an ICFA claim if they satisfy a somewhat broader "consumer nexus" test. *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 268–69 (Ill. App. Ct. 1998). This difference in approach is of no concern to us today. Ms. Roppo's claim arises out of alleged misrepresentations to an opposing party during the course of litigating a private personal injury action. The complaint simply fails to articulate how Travelers's conduct harms its consumers (like Block) or generally implicates consumer protection concerns. Therefore, under either approach, the alleged misrepresentation here is beyond the ambit of the statute. *See Bank One Milwaukee*, 783 N.E.2d at 222 (holding that there was a consumer nexus when the plaintiff alleged that "a merchant bound her to a commercial transaction through a fraudulent act"). Combined with the complaint's failure to allege reliance, *see infra* at 49, we conclude that Ms. Roppo has not stated a violation of the ICFA.

of insurance policy limitations by an adverse party in civil litigation. Nor is such an application self-evident; the statute is applicable to deception occurring "in a course of conduct involving trade or commerce." *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 267 (Ill. App. Ct. 1998). We consistently have held that "it is not our role to break new ground in state law." *Lopardo v. Fleming Cos., Inc.*, 97 F.3d 921, 930 (7th Cir. 1996). That counsel is certainly applicable here.

Moreover, to recover under the ICFA,[80] a plaintiff also must be deceived by the defendant's misrepresentation. *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009); *see also Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1199 (Ill. App. Ct. 2008).[81] As we have noted earlier, Ms. Roppo specifically pleaded that she did not believe Travelers's misrepresentations.[82] Because she did not believe those statements, she also cannot have been *deceived* by Travelers. She thus has pleaded herself out of court on this count as well.

---

[80] ICFA claims are evaluated under Rule 9(b)'s heightened pleading standard. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014).

[81] *See also* American Bar Association, *Survey of State Class Action Law: Illinois* § 18, Westlaw (database updated Dec. 2016) (discussing that, under recent precedent, Illinois courts have not permitted ICFA class actions to proceed when plaintiffs have not established that they actually were deceived by the defendant's conduct). *But cf. Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (issued before the decision of the Supreme Court of Illinois in *De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009)).

[82] *See supra* note 70 and accompanying text.

**5.**

Count IX of the third amended complaint alleges that Travelers violated the Illinois Insurance Code when it vexatiously and unreasonably delayed in settling her claim. Travelers counters that penalties under 215 ILCS 5/155 of the Illinois Insurance Code are available only to the insured and therefore Ms. Roppo cannot sustain a claim.

We agree with the district court that Ms. Roppo cannot state a claim under § 155. That section of the Illinois Insurance Code "provides that a court may award attorney fees and specified penalties in an action against an insurer when the court determines, in its discretion, that the insurer's delay in settling a claim was unreasonable and vexatious considering the totality of the circumstances." *Garcia v. Lovellette*, 639 N.E.2d 935, 937 (Ill. App. Ct. 1994). Section 155 "is designed 'to protect insured parties who are forced to expend attorneys' fees where the insurer refuses to pay *under the terms of the policy*.'" *Id.* (emphasis in original) (quoting *Stamps v. Caldwell*, 273 N.E.2d 489, 492 (Ill. App. Ct. 1971)). The Supreme Court of Illinois has interpreted section 155 as "extend[ing] only to the party insured" and has stated explicitly that "the remedy embodied in section 155 of the Insurance Code does not extend to third parties." *Yassin v. Certified Grocers of Ill., Inc.*, 551 N.E.2d 1319, 1322 (Ill. 1990). The only exception to the bar on third party recovery is for assignees of the insured who succeed to the insured's position. *Id.*; *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 920 N.E.2d 611, 625 (Ill. App. Ct. 2009). This exception is limited, however, and "is not intended for 'true' third parties" who do not have a contractual relationship with the insurer. *Garcia*, 639 N.E.2d at 937.

*Yassin* forecloses Ms. Roppo's ability to recover under 215 ILCS 5/155. Ms. Roppo clearly is not the insured under the Travelers policy; Block is. Additionally, Ms. Roppo does not allege that she is an assignee of Block. To the extent that Ms. Roppo asks us to reconsider *Yassin*,[83] we are unable to do so. As a federal court hearing a claim arising under state law, we are bound by the Illinois judiciary's interpretation of its own insurance code. *See State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) ("In fulfilling the mandate of *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a United States district court sitting in diversity, *see* 28 U.S.C. § 1332, must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." (parallel citations omitted)). Because the Supreme Court of Illinois has confronted this exact issue and has decided that a third party to an insurance policy cannot bring a claim under § 155, we conclude that the district court correctly dismissed this claim.[84]

---

[83] Appellant's Br. 47–48 ("The district court decided that since *Yassin* was decided by the Illinois Supreme Court it was required to blindly follow that case. … But the district court could have held that *Yassin* was not correctly decided or, alternatively, that if the Illinois Supreme Court faced the issue now they would not follow *Yassin*." (internal citations omitted)).

[84] The third amended complaint's final claim asserted that Travelers violated RICO by misrepresenting Block's policy limits (Count XI). Below, Ms. Roppo conceded that she inadequately pleaded this claim. She also does not appeal the district court's decision to deny her the opportunity to file a fourth amended complaint. *See supra* note 59 and accompanying text.

**Conclusion**

For the reasons set forth in this opinion, the district court's judgment is affirmed. The allegations in the complaint operative at the time of removal, along with Travelers's disclosure of the relevant umbrella policy limits, were sufficient for the district court to conclude that it had subject matter jurisdiction under CAFA. The "local controversy" exception also does not require remand: Travelers is the "primary" defendant in this action. Moreover, Ms. Roppo's RICO allegations provide an independent basis for federal jurisdiction. Finally, the court did not err in dismissing the third amended complaint because it insufficiently pleads claims of fraudulent misrepresentation, negligent misrepresentation, and negligence, as well as violations of the Illinois Insurance Code, the Illinois Consumer Fraud and Deceptive Business Practices Act, and RICO.

                                                                    AFFIRMED