FIRST NATIONAL BANK OF MOLINE, Plaintiff-Appellant, v. CALIFF, HARPER, FOX AND DAILEY, Defendant-Appellee.

Third District   No. 3—89—0206

Opinion filed December 29, 1989.

Law Office of Mike McElvain, of Bloomington (Mike McElvain, of counsel), for appellant.

Stephen R. Swofford, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and David E. Jones, of Thomas & Hinshaw, Culbertson, of Peoria (Bruce L. Carmen, of counsel), for appellee.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiff First National Bank of Moline brought an action to recover money damages for the negligent preparation of a mortgage by its borrower's attorney. The trial court dismissed plaintiff's second amended complaint for failure to state a cause of action. Plaintiff appeals.

The record reveals the following information. In August 1982, Donald and Janet Cantrill, on behalf of their company Cantrill Development Corporation, found it necessary to secure a loan to keep their business afloat. The Cantrills approached the plaintiff, who agreed to lend them the money if the Small Business Administration (SBA) would guarantee the loan.

The Cantrills hired attorney Robert Mensing of the defendant law firm Califf, Harper, Fox & Dailey, P.C., to assist with the procurement and execution of the loan. The SBA agreed to guarantee the loan if the Cantrills would give a second mortgage on their house as security for the loan. The SBA forwarded an authorization and loan agreement to the plaintiff. The plaintiff then forwarded the SBA documents and information to Mensing, asking him to fill out the forms and meet the requirements listed in the authorization loan agreement.

Additionally, the cover letter sent by the plaintiff to Mensing indicated that should Mensing need any further assistance with the preparation of the forms, he should contact the plaintiff.

Mensing had the Cantrills sign the mortgage individually, when in actuality their home was in a land trust and they were the beneficial owners of the trust. It is unclear whether the mortgage went back to the plaintiff or was retained by Mensing until it was filed on December 28, 1982.

Subsequently the Cantrills gave a third mortgage on the property. Thereafter the Cantrills filed for bankruptcy, and plaintiff's mortgage was declared invalid because the land trustee had never pledged its interest. The plaintiff was classified as a general creditor and received no benefit.

The SBA made demand upon the plaintiff for reimbursement because of the plaintiff's failure to meet one of the loan requirements, that being the second mortgage on the Cantrill's house. The plaintiff settled with the SBA for $22,500.

The plaintiff brought suit against Mensing's employer, the defendant professional corporation, for Mensing's alleged negligence in preparing the mortgage. The trial court granted defendant's motion to dismiss plaintiff's second amended complaint, finding that the plaintiff had failed to state a cause of action. Plaintiff appeals.

The sole issue on appeal is whether a borrower's attorney owes a duty to a lending bank when preparing a Small Business Administration mortgage document necessary to obtain an SBA loan guarantee.

■■ To state a legally sufficient claim for negligence, a plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116.) The determination of whether a duty exists is an issue of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.) To conclude that a duty exists, a court must find that the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.

■■ The general rule of law is that an attorney owes a professional obligation only to his client, not to nonclient third persons. (*Byron Chamber of Commerce, Inc. v. Long* (1981), 92 Ill. App. 3d 864, 868, 415 N.E.2d 1361.) This concept of privity has long protected attorneys from malpractice claims by nonclients. (*Bloomer Amuse-*

*ment Co. v. Eskenazi* (1979), 75 Ill. App. 3d 117, 394 N.E.2d 16.) However, in *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, our supreme court held that, under limited circumstances, a nonclient may maintain a negligence action against an attorney.

In *Pelham* the plaintiffs' mother retained the defendant-attorney to represent her in a divorce proceeding against her husband. The divorce decree contained a provision requiring the husband to maintain the plaintiffs as the prime beneficiaries in his life insurance policies. After the divorce decree was entered, he remarried and named his second wife the beneficiary of the insurance policy. She received the proceeds of the policy after his death.

The plaintiffs sued the attorney for negligence, alleging that they were direct third-party beneficiaries of the contract between their mother and the attorney. The court denied recovery, holding that the plaintiffs' mother retained the defendant to obtain a divorce, a property settlement and custody of the children, not to represent her children's interests as beneficiaries under an insurance policy. As such, the plaintiffs were incidental, rather than intended, beneficiaries of the contract between their mother and the defendant.

The rule in *Pelham*, then, is "for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 21, 42 N.E.2d 96. See also *McLane v. Russell* (1989), 131 Ill. 2d 509.

■ Plaintiff contends that Mensing's representation of the Cantrills was of a nonadversarial nature and that Mensing's preparation of the mortgage securing the loan was intended to benefit both the Cantrills and the plaintiff. As the plaintiff was to benefit from the transaction, plaintiff maintains that it comes within the rule in *Pelham* and was owed a duty of reasonable care by Mensing.

We cannot agree. Plaintiff ignores the "primary purpose and intent" language of *Pelham*. In the instant case the Cantrills, experienced business people, went out and hired an attorney for the sole purpose of assisting them in the procurement and execution of a loan necessary to keep their business afloat. The primary and direct purpose of the relationship was for Mensing to help the Cantrills find a loan and for him to oversee the execution of the loan documents. Obviously another party was going to benefit *somewhat* by making a loan to the Cantrills, *i.e.*, by receiving interest from the loan, but it cannot be said that that this was the primary and direct reason for the Mensing-Cantrill relationship.

Plaintiff's contention that a lender-borrower relationship is non-adversarial in nature is undermined by the history of the Cantrills and the plaintiff. The record indicates that the two parties had done business previously. At one point the plaintiffs called the Cantrills' loan, thereby threatening the survival of the Cantrills' business. It is not unreasonable to infer that the Cantrills wanted someone to watch out for their interests in financial dealings with the plaintiff.

Finally, we note that the SBA sent the documents to the plaintiff. The plaintiff then forwarded the documents to Mensing. Nothing prevented the plaintiff from having Mensing return the completed documents to the plaintiff for plaintiff's own counsel to review. Part of the costs of doing business is legal expense.

For the reasons listed above, the decision of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.