JOEL SCHECHTER, Trustee of the Bankruptcy Estates of Jent Company, Inc., d/b/a Popeye's Famous Fried Chicken, and 401 N. Central Corporation, d/b/a Popeye's Famous Fried Chicken, *et al.*, Plaintiffs-Appellants, v. GARY L. BLANK *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—2433

Opinion filed September 20, 1993.

Levenfeld & Gold, Ltd., of Chicago (Arthur S. Gold, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (Thomas L. Browne, Stephen R. Swofford, and Edward J. Rolwes, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs in this case are Joel Schechter, as trustee of the bankruptcy estates of Jent Company, Inc., d/b/a Popeye's Famous Fried Chicken, and 401 N. Central Corporation, also d/b/a Popeye's Famous Fried Chicken, and Richard Fogel, as trustee of the bankruptcy estate of John Mason and Clotine Mason. Defendants are Gary L. Blank, attorney at law, and Gary L. Blank, Ltd., a legal professional corporation. Plaintiffs brought an action against defendant alleging that he was negligent in his handling of the chapter 11 reorganization proceedings he instituted on behalf of Jent Company, Inc., and 401 N. Central Corporation. On July 3, 1991, the trial judge granted defendant's section 2—619 motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))) on the ground that plaintiffs lacked standing to sue defendant.

In 1986, John Mason, in his capacity as president and majority stockholder of Jent Company, Inc. (Jent), and 401 N. Central Corporation (401), retained defendant to institute chapter 11 bankruptcy reorganizations for both corporations. Section 365(d)(4) of the Bankruptcy Code (11 U.S.C. §365 (d)(4) (1988)) provides in pertinent part:

"(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

Allegedly, defendant was negligent in that, after filing for chapter 11 reorganization for both Jent and 401, he (a) "failed to take those steps and procedures necessary to assume the existing lease held by Jent, which lease was Jent's most valuable asset"; and (b) "failed to defend an application by the franchisor in the 401 Chapter 11 reorganization to compel assumption of 401's franchise agreement, which assumption would have preserved the most valuable asset of 401." As a result of this alleged negligence in failing to preserve the most valuable assets of Jent and 401, plaintiffs assert that the chapter 11 reorganizations were forced to be converted to chapter 7 liquidations in bankruptcy. Plaintiffs also maintain that defendant's negligence forced John and Clotine Mason to file for individual bankruptcy.

Joel Schechter (Schechter) was appointed trustee of the chapter 7 converted bankruptcies of Jent and 401. Richard Fogel (Fogel) was

appointed the trustee of the chapter 7 bankruptcy of the Masons. The plaintiffs' first-amended complaint further alleges:

"6. That as a direct and proximate result of the aforegoing acts or omissions of the Defendants and each of them, the Plaintiff, JOEL SCHECHTER, as trustee and representative of all of the creditors of the two bankrupt corporations in the converted bankruptcy cases of JENT COMPANY, INC. and 401 N. CENTRAL CORPORATION, was unable to sell or operate either one of these bankrupt corporations so as to obtain a fair market price for the going concern value of these corporations, in light of the Court orders deeming the lease (executory contract) and franchise agreement (executory contract) rejected; which sale would have made funds available for payment to all of the creditors of these two bankrupt estates.

7. That as a direct and proximate result of the aforegoing acts or omissions of the Defendants and each of them, JOHN MASON and CLOTINE MASON have been forced to file individual bankruptcy, and RICHARD FOGEL, as their trustee and on their behalf has experienced and will continue to experience substantial economic loss, as real estate which belonged to JOHN MASON and CLOTINE MASON and was used as collateral for various loans in connection with the POPEYE'S franchise operations referred to previously in this Complaint was foreclosed upon; all of which economic loss would have been avoided if the Defendants and each of them had advised JOHN MASON and CLOTINE MASON of the availability of their rights and the rights of the corporations, JENT COMPANY, INC. and 401 N. CENTRAL CORPORATION, as Debtor[s] in Possession, with respect to the assumption of executory contracts which would have permitted these two businesses to operate or be sold and thus raise sufficient funds to pay corporate creditors and declare dividends to JOHN MASON and CLOTINE MASON, as well as preventing foreclosure and sale of real estate in which JOHN MASON and CLOTINE MASON had substantial equity."

On July 7, 1989, defendant filed a section 2—619 motion to dismiss alleging that Schechter and Fogel had no standing to bring this cause of action. On July 3, 1991, the trial judge granted defendant's motion with prejudice. Plaintiffs appeal.

Plaintiffs contend that the intended beneficiaries of the chapter 11 reorganizations of Jent and 401 were the Masons' creditors and the creditors of Jent and 401. They assert, without citation to authority,

that it is "axiomatic" that "a chapter 11 reorganization proceeding is one filed for the benefit of the corporate creditors." Consequently, plaintiffs argue that they have standing to bring a negligence action against defendant for his alleged malpractice.

Defendant, on the other hand, contends that the creditors were not the primary intended beneficiaries of his representation of Jent and 401. He asserts, therefore, that they do not fall within the "narrow exception" to the general rule that an attorney can only be liable to his client. Additionally, he maintains that creditors cannot be the primary intended beneficiaries of a chapter 11 reorganization because creditors are adversaries of the debtor. Defendant also asserts that plaintiffs have waived this argument because they did not allege or otherwise raise a third-party beneficiary theory in the trial court.

It is established that issues and theories not raised in the trial court are deemed waived and cannot be argued for the first time on appeal. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598, 602.) Plaintiffs' argument in the trial court was premised on the theory that "the intended beneficiaries of Defendants' representation of Debtors were unequivocally the Debtors, *as well as all of the Debtors' creditors.*" (Emphasis added.) Therefore, this argument was raised in the trial court and not waived for purposes of appeal.

In order to state a cause of action in negligence, a plaintiff must allege that the defendant owed him a duty, that the defendant breached that duty, and that, as a proximate result of that breach, he suffered an injury. (*First National Bank v. Califf, Harper, Fox & Dailey* (1989), 193 Ill. App. 3d 83, 85, 548 N.E.2d 1361, 1363.) Whether a duty exists is a question of law for the determination of the trial court. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 514, 546 N.E.2d 499, 502; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18-19, 440 N.E.2d 96, 98.) In order for the trial court to find the existence of a duty, the defendant and the plaintiff must stand in such a relationship to one another that the law imposes upon the defendant "an obligation of reasonable conduct for the benefit of the plaintiff." (*First National Bank*, 193 Ill. App. 3d at 85, 548 N.E.2d at 1363, citing *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396.) Consequently, an attorney can only be liable in negligence to persons to whom he or she owes a duty. *Felty v. Hartweg* (1988), 169 Ill. App. 3d 406, 408, 523 N.E.2d 555, 556.

■ The general rule in Illinois is that an attorney owes a duty of care only to his client and not to third parties. (*Pelham*, 92 Ill. 2d at

19, 440 N.E.2d at 99.) The reason for this limited liability is to protect the personal, highly confidential and fiduciary nature of the attorney-client relationship. (*Brocato v. Prairie State Farmers Insurance Association* (1988), 166 Ill. App. 3d 986, 988-89, 520 N.E.2d 1200, 1201-02.) Since an attorney "must represent his client with zeal and undivided loyalty in adversarial matters," he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability. (*Gold v. Vasileff* (1987), 160 Ill. App. 3d 125, 127-28, 513 N.E.2d 446, 448.) " 'To impose such liability on an attorney would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to his client. *Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect.*' " (Emphasis added.) *Gold*, 160 Ill. App. 3d at 128, 513 N.E.2d at 448, quoting *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234-35, 440 N.E.2d 376, 379.

A narrow exception, however, has been carved out in limited circumstances. An attorney owes a duty to a third party only where the attorney was hired by the client specifically for the purpose of benefitting that third party. (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) The *Pelham* court stated that, in order for a nonclient third party to succeed in a negligence action against an attorney, "he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) The *Pelham* court asserted that the "key consideration" for determining if the attorney owed a duty to the third party was whether the attorney was "acting at the direction of or on behalf of the client to benefit or influence [the] third party." *Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.

■ We do not believe that the trial judge erred in dismissing plaintiffs' complaint because, as a matter of law, defendant owed no duty to the plaintiffs. In *First National Bank v. Califf, Harper, Fox & Dailey* (1989), 193 Ill. App. 3d 83, 84, 548 N.E.2d 1361, the plaintiff bank agreed to give Donald and Janet Cantrill a small business loan in order to "keep their business afloat" if the Small Business Administration (SBA) would guarantee the loan. The SBA agreed to guarantee the loan if the Cantrills would give a second mortgage on their house as security for the loan. An attorney at the defendant law firm allegedly was negligent in his preparation of the mortgage documents and, when the Cantrills subsequently filed for bankruptcy, the mortgage was declared invalid. The SBA, therefore, demanded reim-

bursement of the guarantee from the plaintiff bank because plaintiff failed to meet the loan requirement that there be a second mortgage on the Cantrills' home. The plaintiff bank then filed an action against the Cantrills' attorneys alleging negligence in the preparation of the mortgage.

Relying upon *Pelham*, the appellate court affirmed the dismissal of plaintiff's complaint. The court held that the "primary and direct reason" that the Cantrills retained defendant was for defendant to assist them in obtaining a loan so they could "keep their business afloat." The court reasoned that, although the plaintiff bank would obviously benefit by making the loan to the Cantrills in that plaintiff would receive interest from the loan, this benefit to plaintiff clearly was not the "primary purpose and intent" of defendant's representation of the Cantrills.

Similarly, in this case, the primary and direct reason that the Masons hired defendant to represent Jent and 401 in chapter 11 reorganization proceedings was so that they could "keep their business afloat" and, to the extent legally possible, protect their assets from the claims of creditors who were threatening the existence of their business. Clearly, although the creditors of Jent, 401, and the Masons would benefit more from a chapter 11 reorganization than a chapter 7 bankruptcy, the primary purpose and intent of defendant's representation was not the payment of the creditors. Just as a person who hires an attorney to help him obtain a loan does not do so for the primary purpose of paying interest on that loan, a person retaining an attorney to handle a chapter 11 reorganization of his business does not do so for the primary purpose of paying his creditors. It is more accurate to state that Mason hired defendant to institute a chapter 11 reorganization of his businesses, not so he could *pay his creditors*, but so he could continue to *have creditors* and run his business. Therefore, plaintiffs were not the primary intended beneficiaries of defendant's representation and, as a matter of law, defendant did not have a legal duty to plaintiffs. Consequently, plaintiffs' complaint was properly dismissed by the trial judge.

In support of their contentions, plaintiffs direct our attention to the Illinois Supreme Court cases of *McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499, and *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224. Neither case supports their argument that the creditors were the primary intended beneficiaries of the defendant's representation.

In *McLane*, the defendant attorney was hired by a joint tenant to draft a will in which her interest in the property would pass to plain-

tiffs whether or not she survived the other joint tenant. Defendant failed to sever the joint tenancy, however, and upon his client's death, her interest in the property passed by operation of law to the surviving joint tenant. The *McLane* court held that the plaintiffs were the intended beneficiaries of defendant's professional services because the purpose of defendant's representation was to provide a benefit to the plaintiffs.

In *Ogle*, the defendant attorneys were hired by the plaintiffs' aunt and uncle to prepare their wills. Plaintiffs alleged that defendants knew that their aunt and uncle intended that if they both died within 30 days of each other their property would be left to plaintiffs. Defendants did not include a provision in the will, however, which would provide for the disposition of their clients' property in the event "neither testator survived the other by 30 days." Of course, the testators died within 30 days of each other and their property devolved by the law of intestate succession. The *Ogle* court held that the plaintiffs sufficiently alleged that they were the intended beneficiaries of the relationship between defendants and their aunt and uncle.

In both *McLane* and *Ogle*, the court applied the *Pelham* "intent to directly benefit" test for determining whether an attorney owed a duty to a nonclient third party. The *Pelham* court directed that the "key consideration" was whether the attorney was "acting at the direction of or on behalf of the client to benefit or influence a third party." (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) The court also described the rule as requiring that plaintiff prove "that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) The primary purpose of retaining the defendants in both these cases was to provide for the disposition of property upon the clients' deaths to the clients' relatives. The clients were not receiving a benefit from defendant's representation other than the "peace of mind" that comes with knowing that their property would go to their loved ones upon their deaths. The "primary purpose and intent of the attorney-client relationship itself" clearly was to benefit third parties. In fact, it is hard to picture a situation which would fit more perfectly the "intent to directly benefit" test. The instant case clearly is not analogous to the situations in *McLane* and *Ogle* where defendants were retained for the specific purpose of providing for the disposition of their clients' property to specific individuals upon the clients' deaths.

The fact that a third party may benefit from an attorney's representation of his client does not mean that the attorney thereby owes a

duty to the third party. (*First National Bank*, 193 Ill. App. 3d at 86, 548 N.E.2d at 1363.) As stated above, the law only imposes a duty upon an attorney for the benefit of a third party when the "primary purpose and intent" of the attorney-client relationship is to benefit the third party. It would strain the meaning of the "primary purpose and intent" language in *Pelham* for a third party to come within that category simply because he may benefit from the attorney's representation of his client. (See *Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100; *First National Bank*, 193 Ill. App. 3d at 86, 548 N.E.2d at 1363.) Therefore, as a matter of law, defendant's legal obligation and duty of care did not extend past his clients to the creditors of those clients because the creditors were not the primary intended beneficiaries of the attorney-client relationship.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.