In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 17-1999

BRIAN REYNOLDS,

*Plaintiff-Appellant,*

*v.*

HENDERSON & LYMAN and
DOUGLAS AREND,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 7995 — **Robert M. Dow, Jr.**, *Judge.*

_____

ARGUED FEBRUARY 6, 2018 — DECIDED SEPTEMBER 12, 2018

_____

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. This appeal arises out of a malpractice suit that Brian Reynolds brought against the law firm Henderson & Lyman and one of its lawyers (collectively "H&L"), alleging that H&L gave negligent advice to several LLCs that Reynolds co-owned and managed. According to Reynolds, H&L's bad advice led him to violate federal disclosure laws

when he drafted the LLCs' financial statements. The district court granted summary judgment to H&L, explaining that Reynolds could not bring a malpractice suit on his own behalf because he did not have a personal attorney-client relationship with H&L. We review that judgment *de novo*, construing the record in the light most favorable to Reynolds, see *Whitfield v. Howard*, 852 F.3d 656, 661 (7th Cir. 2017). We agree, however, with the district court's analysis and so we affirm.

## I

Our jurisdiction over this case is premised on the parties' diversity of citizenship: the plaintiff, Reynolds, is a citizen of Colorado, and both defendants are citizens of Illinois. The requirements of 28 U.S.C. § 1332(a)(1) are thus satisfied. A federal court sitting in diversity applies federal procedural law and state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, all parties agree that the governing state law is that of Illinois. Under Illinois law, a plaintiff must prove five elements to prevail on a claim for legal malpractice: "(1) an attorney-client relationship; (2) a duty arising out of that relationship; (3) a breach of that duty; (4) causation; and (5) actual damages." *Wash. Grp. Int'l, Inc. v. Bell, Boyd & Lloyd, LLC*, 383 F.3d 633, 636 (7th Cir. 2004) (quoting *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 404 (2001)).

The Illinois Supreme Court has described the attorney-client relationship as "a voluntary, contractual relationship that requires the consent of both the attorney and client." *People v. Simms*, 192 Ill. 2d 348, 382 (2000). Reynolds admits that he never asked H&L to represent him and that H&L never said anything that suggested it thought it was representing him. In other words, the parties never entered into any agreement

that would have created an attorney-client relationship between them. H&L did have an attorney-client relationship with the LLCs that Reynolds co-owned and managed, but that is different. It was in his capacity as a managing member of these LLCs that Reynolds communicated with, and was advised by, H&L. Reynolds's primary argument on appeal is that H&L owed him something akin to a third-party duty of care arising out of its representation of the LLCs, because his personal interests were so closely bound with the interests of the LLCs as to be functionally indistinguishable. This theory might sound plausible on its face, but unfortunately for Reynolds it is foreclosed by decades of Illinois law.

Illinois courts consistently have held that neither shared interests nor shared liability gives rise to third-party liability. For third-party liability in Illinois, Reynolds must have been a direct and intended beneficiary, and "[s]imply because the [officers of a business entity] were at risk of personal liability does not transform the incidental benefits of [the law firm's] representation of [the business entity] into direct and intended benefits for [the officers]." *Reddick v. Suits*, 2011 IL App (2d) 100480, ¶ 44. In fact, the only time an Illinois attorney owes a duty of care to a third party is when the attorney was hired for the primary purpose of benefitting that third party. *Schechter v. Blank*, 254 Ill. App. 3d 560, 564 (1993). Illinois courts have emphasized that the primary purpose of a retainer agreement between a business entity and a lawyer is to benefit the business entity, not to benefit that entity's owners or officers, however closely aligned their interests might be. *Reddick*, 2011 IL App (2d) 100480 at ¶ 44; see also *Schechter*, 254 Ill. App. 3d at 564–66 (collecting cases); *Hager-Freeman v. Spircoff*, 229 Ill. App. 3d 262, 277–78 (1992) (explaining that the

presumption against personal representation extends even to closely held corporations).

Illinois's courts are free to change the state's law or to carve out the exception that Reynolds seeks, but we are not. In fact, even if it were up to us, we would not do so, because the state's current rule makes good sense. A contrary rule would undermine the integrity of the attorney-client relationship by forcing attorneys to assume competing duties of care to non-clients. *Cf. Schechter*, 254 Ill. App. 3d at 564 ("Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect.") (emphasis omitted) (internal quotation marks omitted) (quoting *Schott v. Glover*, 109 Ill. App. 3d 230, 234–35 (1982)). In addition, the rule that Reynolds asks us to adopt would chip away at the legal distinction between entities and individuals—a distinction that serves as the basis for the existence of many business structures, including that of the LLC. It would be bizarre indeed if a business's owners or officers could cloak themselves in the protections provided by the limited-liability corporate structure when they enter contracts or defend against a lawsuit, yet cast that structure aside when seeking to recover as plaintiffs for injuries sustained by the business. In law, as in life, double standards are frowned upon.

## II

The result in this case thus appears to be straightforward, but Reynolds has two more arguments for us. Both are worth addressing, although neither succeeds. First, Reynolds argues that the district judge lacked the power to grant summary judgment *at all* because (1) the allocation of duties between a

judge and jury is a procedural matter under the *Erie* doctrine, and as he sees it, (2) federal procedural law requires that a jury—not a judge—decide whether a duty is owed in professional negligence cases. Reynolds's first point is correct, but the second is not, and even if both were sound the conclusion would not follow.

The Supreme Court held in *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958), that the question "who decides a case?" is a procedural one, and thus a matter of federal rather than state law. This is an uncontroversial proposition, despite the fact that some of this circuit's past tort cases have not been as precise as they should have been, and so occasionally we have cited *state* law in support of the proposition that judges, rather than juries, decide whether a duty exists in negligence cases. See, *e.g.*, *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014). Those citations, however, were far from holdings in the cases where they appeared. Indeed, they were immaterial because the judge-jury allocation was not disputed by the parties. Whenever we have directly confronted the issue of how to divide responsibility between judges and juries, we have followed the Supreme Court's command in *Byrd* and held that "[w]hether the trier of fact is a jury, a judge, or a magistrate judge … is a subject for the forum's own law." *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333 (7th Cir. 1994) (circulated to full court under Local Rule 40(e)); see also, *e.g.*, *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

Even though Reynolds is thus correct that state law does not dictate the allocation of tasks between the judge and the jury in a federal court, this fact does not help his case. That is because federal law treats the question whether a duty exists as an issue of law to be decided by a judge. *Dunn*, 880 F.3d at

906. It does so for good reason. "Judges, not juries, decide questions of law," *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571 (7th Cir. 1995), and—at the risk of stating the obvious— the question whether Illinois law imposes a duty of care on someone is a question about the scope of Illinois law. Federal procedure usually requires judges to answer such "scope" questions, *id.*, as a quick look at the Supreme Court's federal-question jurisprudence reveals. *E.g.*, *Pacific Bell Tel. Co. v. Linkline Communications*, 555 U.S. 438, 444–49 (2009) (antitrust law); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) (admiralty); see also *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., Ltd.*, 138 S. Ct. 1865, 1872–73 (2018) (content of for-eign law is a question for the judge).

Even if the existence of a duty were a jury question under federal law (and it is not), Reynolds still would not be able to avoid summary judgment. Illinois substantive law would govern any jury's decision, and Illinois law is clear that an at-torney for a business entity owes her duty of care to the entity itself, not to its individual owners, officers, or directors. *Ma-jumdar v. Lurie*, 274 Ill. App. 3d 267, 270 (1995). In other words, no reasonable jury could have found in Reynolds's favor based on the facts he alleges—which means that summary judgment against him is warranted, period. *Mayer*, 29 F.3d at 333 ("In some states juries are entitled to decide all questions of fact and law, yet this does not compel a federal court to disregard provisions for summary judgment.").

The second argument by which Reynolds hopes to avoid summary judgment relies on an alternate legal theory. He contends that even if he cannot state a malpractice claim against H&L, he does have a valid breach-of-contract claim

against the firm, because he was an intended third-party beneficiary of H&L's retainer agreement with the LLCs. As the district court noted, this claim is duplicative of Reynolds's malpractice claim and it fails for the same reasons. There is no suggestion in the record that H&L undertook its representation of the LLCs for the direct and manifest purpose of benefiting Reynolds, as is required for third-party beneficiary status in Illinois. *Pelham v. Griesheimer*, 92 Ill. 2d 13, 17–18 (1982).

## III

Illinois courts have considered and rejected the theories of liability on which Reynolds relies, and so we AFFIRM the judgment of the district court dismissing his case.