2023 IL App (1st) 221155-U

SIXTH DIVISION
July 14, 2023

No. 1-22-1155

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| *In re* ESTATE OF RICHARD A. VALENTINO, an Alleged Person With a Disability, | ) ) ) Appeal from the ) Circuit Court of |
| (Richard T. Valentino, | ) Cook County. ) |
| Petitioner-Appellant, | ) ) |
| v. | ) No. 20 P 3389 ) |
| Richard A. Valentino, | ) ) The Honorable |
| Respondent, | ) Susan Kennedy-Sullivan, ) Judge Presiding. |
| (Adam M. Stern, Appellee)). | ) |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court did not err in this guardianship action in granting the respondent's attorney's petition for fees or in granting the limited guardian's motion to quash petitioner's subpoena for documents related to those fees.

¶ 2   Richard T. Valentino (petitioner) appeals from the circuit court's grant of a fee petition in favor of Adam Stern, the attorney who represented petitioner's father, Richard A. Valentino (respondent), in this guardianship action. On appeal, petitioner argues that the circuit court abused

its discretion by granting Mr. Stern's fee petition and by granting a motion to quash petitioner's request to produce certain documents he sought to contest those fees. Petitioner also argues that the circuit court erroneously denied his motion to reconsider the grant of the fee petition. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 31, 2020, petitioner filed a petition to have his father adjudicated a person with a disability in need of a guardian and nominated First Midwest Bank as the guardian of respondent's estate. When the petition was filed, respondent was 90 years old. Petitioner alleged that respondent had a disability due to a "major neurocognitive disorder" and, as a result, that he lacked "sufficient understanding or capacity to make or communicate responsible decisions concerning the care of [his] person" and was "unable to manage [his] estate or financial affairs." Respondent vigorously contested this petition and his attorney, Adam Stern, has represented him throughout these proceedings.

¶ 5      Shortly after the petition for guardianship was filed, on September 11, 2020, the circuit court appointed a guardian *ad litem* (GAL) to provide the court with a recommendation. In his November 2, 2020 report, the GAL reviewed respondent's doctor's report in which the doctor diagnosed respondent with a " 'Major Neurocognitive Disorder, most likely Front Variant of Alzheimer's disease" and opined that respondent was "totally incapable of making financial decisions due to a demonstrated lack of judgment." The GAL interviewed respondent's four adult children. According to the GAL, each expressed concern that respondent was making poor financial choices and that a neighbor with whom respondent had been spending time over the last several years, Charlene Gutierrez, was exhibiting undue influence over respondent. The GAL also interviewed respondent, during which, according to the GAL, respondent said he "plan[ned] to

hire a lawyer and spend all his money on fighting this petition." The GAL recommended that it was in respondent's best interest that First Midwest Bank be appointed as the guardian of his estate.

¶ 6       The parties initially came to a settlement agreement, which was filed with the court on January 20, 2021. Petitioner agreed to nominate Midwest Care Management Services Inc. (Midwest Care Management), rather than First Midwest Bank, as the temporary limited guardian of the estate "in reliance on the representations made by [Ms. Gutierrez] and Respondent herein, and at the request of Respondent." Midwest Care Management was to obtain full and complete records of respondent's "finances, assets, and transfers beginning January 1, 2017," and, on or before March 1, 2021, was to "provide a report as to any and all financial benefits provided by Respondent to or for the benefit of [Ms. Gutierrez] or anyone related to her." Ms. Gutierrez agreed to "fully and completely waive[ ] and release [] any and all past and future claims" with respect to respondent's estate in exchange for 20% of respondent's estate plan, a bank account in her name with $30,000, and respondent's car. In addition, petitioner and the other signatories agreed to waive any right to contest distributions to Ms. Gutierrez since January 1, 2017, "[o]n the express condition" that those transfers to Ms. Gutierrez totaled less than $10,000. Respondent and Ms. Gutierrez represented that respondent had provided her with no more than $10,000, from January 1, 2017, through the present, and agreed that if more had been transferred, those additional assets were to "be transferred back to the Estate" or "offset against the inheritance" of Ms. Gutierrez. The settlement agreement was signed by petitioner, respondent, respondent's three other children, and Ms. Gutierrez.

¶ 7       As dictated by the settlement agreement, Midwest Care Management was appointed as the temporary limited guardian of respondent's estate on January 20, 2021. On June 16, 2021, more than three months after it was initially due, Midwest Care Management filed its report on financial

benefits Ms. Gutierrez received from respondent beginning in 2017. That report found that only six checks of $1000 each had been written to Ms. Gutierrez between 2017 and 2020. The report concluded that Ms. Gutierrez received $6000 from respondent and that "[w]hile it [wa]s possible that benefits were received via cash and/or credit card purchases, the beneficiary of specific purchases cannot be ascertained without [ ] fact specific information regarding specific transactions and/ or the daily habits of [respondent]."

¶ 8     On September 2, 2021, petitioner filed his own report based on his review of respondent's financial records, concluding that "one or more third parties had access" to respondent's credit cards, and that $50,000 in cash was missing and "the only reasonable inference to be drawn [wa]s that much or all of it went to, or was applied for the benefit of," Ms. Gutierrez. Petitioner also found that the financial benefits flowing from respondent to Ms. Gutierrez during the relevant time exceeded $10,000, without "attribut[ing] a cent to [Ms. Gutierrez] for the many purchases of foods and goods that cannot reasonably be attributed to Respondent nor any of the missing $50,000 in cash to [her]." The following day, petitioner filed a petition to appoint First Midwest Bank, instead of Midwest Care Management, as the limited guardian of respondent's estate.

¶ 9     On September 7, 2021, respondent, through his attorney Mr. Stern, filed a motion to strike petitioner's report. Mr. Stern also filed a "petition for respondent to exercise his rights under the Illinois Probate Act," noting that respondent "prefer[red] to have the current temporary guardian, [Midwest Care Management] act as his temporary guardian" of the estate.

¶ 10    On November 22, 2021, the court entered an agreed order, under which Midwest Care Management was discharged, petitioner withdrew his report, and respondent's estate and any heirs of respondent waived claims against Ms. Gutierrez. The agreed order also memorialized a waiver signed by Ms. Gutierrez, under which she released any rights to any part of respondent's estate.

On the same day, Arboretum Wealth & Trust Management (Arboretum) was appointed guardian of respondent's estate.

¶ 11    Mr. Stern filed his petition for attorney fees on January 7, 2022, requesting fees and costs totaling $24,648.75, for 90.6 hours of work from October 21, 2020, through January 6, 2022, at a rate of either $275 or $300 per hour with lower rates for the few hours spent by others in his firm. Petitioner objected to the petition and issued a request for documents from Arboretum. Arboretum moved to quash the request.

¶ 12    The circuit court held a joint hearing on the fee petition and motion to quash on March 25, 2022. At the hearing, Mr. Stern argued that petitioner had "a fundamental misunderstanding of guardianship" and what rights respondent had, and that the fees were justified and reasonable because it was a "very contested case" and Mr. Stern had "to do a lot of work to get [respondent] to agree to the settlement agreement."

¶ 13    In response, petitioner argued that Mr. Stern had represented Ms. Gutierrez in conflict with his representation of respondent and that such representation should not be paid out of respondent's estate. Mr. Stern acknowledged that he "talked to [Ms. Gutierrez] frequently," but said that respondent "was informed every step of the way, and these were his directions." Mr. Stern argued that respondent "care[d] very deeply about" Ms. Gutierrez, and that "[e]verything [he] did was at the exact direction" of respondent. During Mr. Stern's argument, petitioner objected to Mr. Stern's representation of what respondent wanted as hearsay, but no direct ruling was made on that objection at the time.

¶ 14    Mr. Stern continued by arguing that the family wanted Mr. Stern "to get [Ms. Gutierrez] to agree to waive her inheritance and to leave. And so to do that, I had to talk to her to do so under the direction of my client." He explained that he had been "very clear with [Ms. Gutierrez] that

[he] d[id] not represent her."

¶ 15    The circuit court then said to petitioner, about Mr. Stern, "[h]e is an attorney with a license. He is protecting his client. I'm not going beyond that. If he just represented that it was at his client's direction, that's enough for me. That's it."

¶ 16    Petitioner argued that his father lacked capacity, and that they were "in this court because [his] father [wa]s being unduly influenced and manipulated by this woman." To this, the court noted that respondent had not been found to lack capacity and that the guardianship was of his estate only. The court said, "I d[id] not receive a settlement agreement that had a scintilla of settlement as to capacity. And the law is unequivocally clear there's a presumption of capacity."

¶ 17    Petitioner argued that Mr. Stern "demanded [Midwest Care Management], and your GAL did not want [Midwest Care Management], but everyone acquiesced because that was required by Mr. Stern to get the case settled. It is not the way you are describing. It was forced upon us—" to which the judge replied, "[s]ettlement is an agreement. We all remember that from the first day of law school." The judge then said she did not always agree to a fee petition, but that she believed Mr. Stern deserved it, saying, "I recall the multiple times it was his efforts to negotiate with your father. Your father was not willing to concede everything that you and your siblings wanted him to." The judge also said, "[u]nless you can persuade me that an entry *** is inappropriate or redundant or miscalculated, I'm going to approve his fees." The judge then explained:

"I have four criteria, four, to look at bills. They're in the case law. I use them every single day. The most critical is did the time spent benefit the ward or in this case the not disabled person. And [the] answer is Mr. Stern was the one that pushed this towards settlement rather than a hearing. He advocated—He presented his client with reasonable options that your father chose to agree with. That's advocacy. I can speak to his skills. He's in my

courtroom all the time."

The judge also said that Mr. Stern "does a good job. *** I have not heard from you that there's an entry that goes against—that was a length of time that shows a lack of skill. I don't see it." The judge further pointed out that petitioner's attorneys had submitted a $45,000 fee petition that was paid out of respondent's estate.

¶ 18    With respect to the motion to quash, counsel for Arboretum explained that Arboretum was "willing to pull records and review those records [itself]," but that "[i]f [petitioner] is given an inch, he will take a mile." Counsel for Arboretum argued that she filed the motion to quash "because [Arboretum] fully believes that the requests are not relevant to what was before the Court today." Counsel concluded, "I think my client's fully able to do their own due diligence as the limited guardian of this estate and do any kind of investigation that your Honor wants them to do."

¶ 19    The judge explained that she was granting the motion to quash because she gave petitioner the "authority to respond to the fee petitions" but not "expanded authority to do discovery. And I think that that is a completely different animal and not something that I've approved."

¶ 20    On March 25, 2022, the circuit court entered separate written orders granting Mr. Stern's petition, awarding him $24,648.75 in attorney fees, and also granting Arboretum's motion to quash the request to produce.

¶ 21    Petitioner moved to reconsider the grant of the fee petition. After a hearing on June 30, 2022, the circuit court denied petitioner's motion.

¶ 22                                    II. JURISDICTION

¶ 23    On August 1, 2022, petitioner filed a timely notice of appeal from the court's orders of March 25 and June 30, 2022. This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016), governing orders "entered in the

administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." See *In re Trusts of Strange ex rel. Whitney*, 324 Ill. App. 3d 37, 40-42 (2001) (the trial court's denial of a fee petition in a trust case "was a final resolution of the fees" and, "in the interest of efficiency and the sound and practical administration of the trusts, the issue was immediately appealable" under Rule 304(b)(1)); *In re Estate of Kime*, 95 Ill. App. 3d 262, 268 (1981) (finding that, under Rule 304(b)(1), the denial of a fee petition in an estate case should have been appealed within 30 days of its entry).

¶ 24                                      III. ANALYSIS

¶ 25                              A. Standing and Forfeiture

¶ 26    As an initial matter, Mr. Stern argues that petitioner lacks standing to bring the present appeal. However, "lack of standing is an affirmative defense, which is the defendant's burden to plead and prove," and "a lack of standing will be forfeited if not raised in a timely manner in the trial court." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). Mr. Stern did not raise the issue of standing in the circuit court and has therefore forfeited the issue on appeal. While we agree with him that there may be questions as to whether petitioner has suffered the necessary "injury-in-fact" to give him standing (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988)), because Mr. Stern did not raise this below, we lack a clear record on appeal to decide this issue. In any event, because we ultimately reject all of petitioner's arguments, the question of his standing is more academic than consequential in this case.

¶ 27    Mr. Stern also argues that petitioner forfeited his ability to challenge the fee petition on appeal because he failed to raise the issues in a written posttrial motion. However, in this non-jury, non-trial case, any post-judgment motions were governed by section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2020)), and under that section, the failure to file a

posttrial motion does not result in forfeiture. See *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶¶ 24-28 (explaining that "the plain language of the Code and its separate sections for jury and nonjury cases indicate that the legislature intended different requirements and results for jury and nonjury cases, with the failure to file a posttrial motion resulting in waiver in jury cases but not in nonjury cases"). We also note that petitioner did raise the issue in his motion to reconsider the grant of the fee petition.

¶ 28    And although Mr. Stern is correct that petitioner did not raise the issue of the motion to quash in his motion to reconsider, he *did* object to the motion to quash, and this issue was very much before the circuit court. Again, there is no forfeiture in a non-jury case for a failure to raise a matter in a post-judgment motion.

¶ 29    We now turn to the merits of the appeal.

¶ 30                              B. Mr. Stern's Fee Petition

¶ 31    Petitioner argues that the circuit court abused its discretion by granting Mr. Stern's fee petition. Section 11a-11(a) of the Act provides, among other things, that a respondent "is entitled to be represented by counsel." 755 ILCS 5/11a-11(a) (West 2020). In addition, the Act provides that "[t]he court may allow counsel for the respondent reasonable compensation." *Id.* § 11a-10(b). The reasonableness of an attorney's fees is a matter within the discretion of the circuit court. *In re Estate of Halas*, 159 Ill. App. 3d 818, 831 (1987). To determine whether fees are reasonable in the probate context, a court may consider the following factors:

> "good faith, diligence and reasonable prudence used by the attorneys; time expended; the size of the estate; the work which was done; the skills and qualifications of counsel; the novelty and complexity of the issues confronted; and the benefits conferred on the client by the legal services rendered." *Id.* at 832.

We will not disturb the findings of the circuit court as to fees so long as "there is any evidence in the record to support the findings." *Id.* at 831.

¶ 32    Petitioner raises no issue about Mr. Stern's legal skills, diligence, the time expended, or the rates charged. Instead, relying on the Illinois Rules of Professional Conduct of 2010 (Professional Conduct Rules), petitioner's primary argument is that Mr. Stern had a conflict of interest arising out of his "joint representation" of respondent and Ms. Gutierrez. As petitioner points out, the Professional Conduct Rules prohibit the representation of a client if it "will be directly adverse to another client." Ill. R. Prof'l Conduct 1.7(a)(1) (eff. Jan. 1, 2010). There are several reasons that this objection to the petition has absolutely no merit.

¶ 33    First, this does not appear to be a proper objection to a fee petition. See, *e.g.*, *In re Estate of Weber*, 2021 IL App (2d) 200354 (concluding that "the disciplinary system, not a hearing on fee petitions, would be the proper forum in which to deal with the question of a conflict of interest").

¶ 34    Second, and perhaps more importantly, there was no simultaneous representation of parties with conflicting interests. To form an attorney-client relationship, both the attorney and the client must consent to its formation" and "[c]onsent can be express or implied." *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 10. Simply because a third party benefitted from an attorney's representation of a client does not create a duty between the attorney and the third party, let alone an attorney-client relationship. See *Schechter v. Blank*, 254 Ill. App. 3d 560, 566-67 (1993). Petitioner can point to no evidence that either Mr. Stern or Ms. Gutierrez ever consented to an attorney-client relationship.

¶ 35    Petitioner's complaint is that Mr. Stern advocated for things that benefitted Ms. Gutierrez. But that was what his client wanted. A guardian was only appointed over respondent's estate—

respondent was not found to lack capacity such that he required a guardian of his person. The circuit court made this clear. Mr. Stern was respondent's lawyer in the guardianship proceeding, not a guardian. Mr. Stern was thus required to "abide by [his] client's decisions concerning the objectives of representation" and "abide by [his] client's decision whether to settle a matter." Ill. R. Prof'l Conduct (2010) R. 1.2(a) (eff. Jan. 1, 2016).

¶ 36 Petitioner objects to the fee petition on the basis that some entries reveal that Mr. Stern corresponded with Ms. Gutierrez—by telephone, and text message—mostly with respondent present but independently as well, and met with both respondent and Ms. Gutierrez together on multiple occasions. But as Mr. Stern notes in his brief, "it was imperative for [him] to correspond with [Ms.] Gutierrez as a matter of fact-finding and to further settlement in favor of his client's wishes and at his client's direction."

¶ 37 Petitioner argues that Mr. Stern "negotiated for the car on [Ms. Gutierrez's] behalf and advocated her innocence in taking its title" based on an email from Mr. Stern to petitioner's attorney. Even this email undermines petitioner's point, however, because Mr. Stern makes clear in that email, as he made clear at the fee petition hearing, that he was negotiating on behalf of *his client*, respondent. In the email, Mr. Stern said that respondent "would go along" with the proposed settlement agreement if Ms. Gutierrez getting his car was added to it. Ms. Gutierrez may have benefitted from this negotiation, but that is simply because respondent *wanted* to benefit Ms. Gutierrez, and Mr. Stern was representing respondent.

¶ 38 Petitioner also highlights Mr. Stern's work with respect to the waiver and release that Ms. Gutierrez signed. Before she signed, Mr. Stern's invoice shows that he spent 12 minutes reviewing and "determin[ing] how to amend it," spent 18 minutes exchanging "[n]umerous texts" with Ms. Gutierrez, and met with Ms. Gutierrez for 18 minutes to discuss edits to the waiver and get her

signature notarized. Ms. Gutierrez's signature on the waiver was notarized on October 19, 2021. The next day Mr. Stern, per his invoice, reviewed Ms. Gutierrez's questions and attended court, for a total of one hour of work. These tasks, adding up to less than two hours of work, do not convince us that the circuit court erred by not finding an attorney-client relationship. As Mr. Stern points out, Ms. Gutierrez's signing of both the settlement agreement and the waiver were necessary steps in the process of ultimately settling the contentious issue of who to appoint as guardian of respondent's estate. The guardianship issues are what Mr. Stern was hired to represent respondent on, and he was able to help get those issues settled.

¶ 39    In short, even if a conflict of interest was a proper basis for denying a fee petition, there is no evidence of an attorney-client relationship existing between Mr. Stern and Ms. Gutierrez and thus there was no basis on which to find a conflict of interest between them. Based on the record before us, we cannot find that the circuit court erred in granting the fee petition over petitioner's objection on the basis of a conflict between Mr. Stern and Ms. Gutierrez.

¶ 40    Petitioner also argues the circuit court abused its discretion in granting the fee petition because there was "substantial evidence that he had a conflict of interest based on his relationship with [Midwest Care Management]." In support of this argument, petitioner asserts that Mr. Stern "filed [a] petition to keep [Midwest Care Management] as Respondent's guardian based on their allegedly close relationship with Respondent," despite what petitioner characterizes as Midwest Care Management's poor handling of respondent's estate. It is unclear to us what, exactly, Midwest Care Management's success as temporary guardian of respondent's estate has to do with Mr. Stern's fee petition. And, again, petitioner appears to ignore that Mr. Stern was representing respondent, and the evidence that respondent insisted on Midwest Care Management. This does not create a conflict of interest between Mr. Stern and Midwest Care Management. In addition, the

fact that Mr. Stern worked with Midwest Care Management during his representation of respondent similarly shows that Mr. Stern was representing his client, not that he put a business relationship "ahead of his fiduciary duty to Respondent." This speculative and legally unsupported argument does not show an abuse of discretion by the circuit court in granting Mr. Stern's fee petition.

¶ 41    Additionally, petitioner argues that the circuit court abused its discretion in granting Mr. Stern's fee petition because it relied on Mr. Stern's "unsworn hearsay testimony" as a basis for its decision. Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801 (eff. Oct. 10, 2015). Hearsay is generally inadmissible. Ill. R. Evid. 802 (eff. Jan. 1, 2011). However, the "unsworn hearsay testimony" petitioner refers to are the statements Mr. Stern made that he was acting on the express direction of respondent as his client. This is neither hearsay, nor is it even evidence. An "attorney-client relationship is one of principal and agent." *In re Marriage of Stephenson*, 2011 IL App (2d) 101214, ¶ 35. As the agent of respondent, Mr. Stern was advising the circuit court what his client wanted, and the court did not err in relying on those statements.

¶ 42                              C. Arboretum's Motion to Quash

¶ 43    Petitioner also argues that the circuit court abused its discretion and erred as a matter of law by granting Arboretum's motion to quash because he had the "right to conduct reasonable discovery."

¶ 44    A circuit court has "great latitude in determining the scope of discovery, and discovery orders will not be disturbed absent an abuse of discretion." (Internal quotation marks omitted.) *Enbridge Pipeline (Illinois), LLC v. Temple as Trustee of Carla S. Temple Family Trust*, 2019 IL App (4th) 150346, ¶ 45. This is "the most deferential standard of review—next to no review at

all—and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). "An abuse of discretion exists where no reasonable person would take the position adopted by the [circuit] court." *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 476 (2001).

¶ 45 Here, petitioner argues that granting the motion to quash was an abuse of discretion because "[t]he discovery sought was minimal, non-privileged, relevant and material to whether [Mr.] Stern was acting subject to a conflict of interest, and/or whether his statements to the [circuit] court, that Respondent's substantial expenditures were 'normal,' were true." All of this may be true, but that does not mean the circuit court abused its discretion in granting the motion to quash. It is not clear what relevance these documents have to Mr. Stern's fee petition. The circuit court presided over this case for over a year and gave petitioner significant leeway with respect to his participation in it. On this record, we simply cannot say that no reasonable person would have taken the circuit court's position.

¶ 46 Petitioner maintains that "[a]n interested party's right to challenge [the] validity of a fee petition is [a] 'basic right that they must be given,' " quoting *Matter of Rice's Estate*, 77 Ill. App. 3d 641, 654-55 (1979). But that case does not stand for the proposition that any interested party has an *unfettered* right to challenge a fee petition in any manner they see fit. Here, petitioner was able to exercise his right to challenge Mr. Stern's fee petition. The fact that he was not granted the discovery he wished does not mean the court erred as a matter of law. And on this record, we find no abuse of discretion in quashing petitioner's discovery request.

¶ 47 D. Petitioner's Motion to Reconsider

¶ 48 Finally, petitioner argues that the circuit court erred in not granting his motion to reconsider the grant of the fee petition, largely based on arguments he has made on appeal. We review the

ruling on a motion to reconsider for an abuse of discretion. *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 21. Because we have found the circuit court did not err in granting of Mr. Stern's petition for fees, we find no abuse of discretion in its denial of the motion to reconsider.

¶ 49                                       IV. CONCLUSION

¶ 50    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 51    Affirmed.